CASE 12—ACTION AGAINST SURETIES ON OFFICIAL BOND OF MASTER COMMISSIONER—FEB. 26.

# Ison, &c. v. Commonwealth, for use of, &c.

APPEAL FROM LETCHER CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL. AFFIRMED.

MASTER COMMISSIONER—FAILURE TO REQUIRE RENEWAL OF BOND—RELEASE OF SURETIES—COLLECTION OF BOND PAYABLE TO COMMISSIONER.

Held: 1. The failure of the court to require a master commissioner to renew his bond as required by Kentucky Statutes, section 392, does not release the sureties in the existing bond.

2. Under Civil Code Practice, section 697, providing that the purchaser of property sold under an order of court shall give bond for the price payable to the officer making the sale unless the court shall otherwise direct, and Kentucky Statutes, section 1676, providing that execution may issue on such bond "if not paid at maturity," the master commissioner is authorized, without an order of court, to collect a bond made payable to him for the price of property sold by him under an order of court, and the sureties in his official bond are liable therefor.

Ison, &c. v. Commonwealth, for use of, &c.

S. B. DISHMAN FOR APPELLANTS.

D. D. FIELDS OF COUNSEL.

1. The collection of the money, for which appellants were sued as
sureties on the bond of Fitzpatrick, as Commissioner, was col-
lected by Fitzpatrick, without authority from the court, and he
was liable individually, and not as an official.

2. The appellants, if they did sign Fitzpatrick's bond as Commission-
er, did so under contract and agreement on the part of the court
and the Commonwealth, that Fitzpatrick would renew the bond
annually. The liability claimed was created more than one year
after the execution of the bond executed by the appellants, and
no other bond was afterwards taken or required from Fitzpatrick
by the court. Ky. Stats., secs. 394 and 395; Ketter v. Thompson,
13 Bush., 287; Rigway, &c. v. Moody's Admr., 91 Ky., 583; Bel-
lington v. Com., 79 Ky., 400; Wilson, Receiver v. Linville, &c.,
96 Ky., 52.

3. The appellant, Ison, pleads that his name was signed, as surety
only, to said bond, that same was signed by another without writ-
ten authority so to do. If this plea is good, as to Ison, then
the other sureties are released.

TYREE & ADAMS, ATTORNEYS FOR APPELLEE.

On the ———— day ——————, 1896, Fitzpatrick, as Master Commis-
sioner of the Letcher Circuit Court, collected $620.70, belonging
to appellee Ramsey, being amount resulting from the sale of cer-
tain lands made by said Commissioner in a suit of appellee
Ramsey, then pending in said court. The Commonwealth failed
to pay over, or account for, $276.73, of said money. Suit was
brought by Ramsey on Fitzpatrick's official bond, as Master Com-
missioner, to which Fitzpatrick, made no defense, and judgment
was rendered against him by default. Defendants Lusk and
Goldiron, filed general demurrer to plaintiff's petition which
was overruled by the court. The defendant, Ison, filed separate
answer in three paragraphs, to which the court sustained a de-
murrer and judgment rendered for the plaintiff from which the
defendants prosecute this appeal.

1. The first paragraph of Ison's answer is that he signed as surety
only, and that his name was signed by another without writ-
ten authority, so to do. This is not a sufficient denial. It does
not amount to a plea of *non est factum*. He does not flatly
deny that he signed or executed the bond.

2. His second plea is that the money was collected by Fitzpatrick
without authority to do so. Appellee shows in his petition that
the sale bond on which the money was collected was, by order of

court, made payable to Fitzpatrick as Commissioner. This plea is not controverted and is a fact.

3. The third plea is, that Fitzpatrick had not been required by the court to renew his bond, annually, and the sureties were thereby released. This plea is not tenable. The sureties can not hide behind their own laches. 13 Bush., 287; 91 Ky., 582; 8 B. Mon., 129.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—AFFIRMING.

On February 27, 1893, J. J. Fitzpatrick was appointed master commissioner of the Letcher Circuit Court, at which time he executed a bond as commissioner in the usual form, with the appellants as sureties. At the August term, 1895, the court required him to execute another bond, upon which George Hogg and others became sureties, each of which bonds was accepted and approved by the court. At November term, 1895, in an action then pending in the Letcher Circuit Court, wherein R. G. Ramsey was plaintiff and M. J. Holt and others defendants, a certain tract of land was ordered to be sold on a credit of six and twelve months, bonds for the purchase money to be taken payable to Fitzpatrick, commissioner, to have the force and effect of a judgment. It is averred in the petition that there was an order authorizing Fitzpatrick to collect the money due on the bonds. He collected the money but failed to account for part of it, and this action is brought to recover the unpaid balance. The only defenses made by Moses Ison to which we deem it necessary to advert are: First, the averment of his answer that there was an order of court ordering the commissioner to collect the money, and that he collected it without authority; second, that it was the duty of the court to have required a renewal of his bond annually, and, as it was not done (not having taken one in 1894), the sureties on the first bond were released, as their liability was increased by reason of the failure of the court to so take a bond annually.

We will consider the questions in their reverse order. Section 392, Kentucky Statutes, reads as follows: "Each circuit court shall appoint a master commissioner for such court, may remove him and appoint another; but no master commissioner shall continue in office more than four years without a reappointment. Before acting, the master commissioner shall be sworn and execute a bond, with surety, to be approved by the court, for the faithful performance of the duties of his office. The bond shall be entered of record in said court, and shall be renewed once in each year, and oftener if required by the court, and a copy thereof, certified by the clerk, shall be evidence in all proceedings in this State." By the terms of this section a commissioner must be appointed every four years, and his bond shall be renewed once in each year, and oftener if required by the court. The renewal bonds are not for the benefit of the sureties who sign the first bond, but for the benefit of the public. This is substantially the same provision of the statute with reference to a renewal of sheriff's bonds; and this court held that the subsequent bonds were not to relieve the sureties in the first bonds from liability, but to protect the public. It is held in Ketler v. Thompson, 13 Bush, 287, that the renewal bond did not retroact, but it bound the sureties to make good losses that resulted from future failures of the sheriff to perform such duties as then rested on him in the collection of executions then in his hands; that the sureties in the original and renewal bonds were jointly bound to answer for the action of their principal. In the case of Ridgway v. Moody's Adm'r, 91 Ky., 581, (16 S. W., 526), the question arose as to whether the sureties in the sheriff's bond were released by reason of the failure of the court to require the sheriff to give a renewal bond. The court held that the failure to renew did

not release the sureties already bound, but, if the renewal bond had been executed, then the sureties in each were jointly liable as co-sureties. The sureties in the first bond could have called the court's attention to the fact that Fitzpatrick had not renewed his bond, and doubtless it would have compelled him to do so, or they could have given notice, and made a motion in court requiring that he give a renewal bond.

The second question arises: Has the master commissioner the right to collect bonds, without an order of court directing him to do so, which were executed for the purchase money of land sold under judgment of court, payable to him? The question as to the authority of a master commissioner to collect money without an order of the court was involved in the case of Rankin v. White, 3 Bush, 545. In that case the court had directed its commissioner to loan a fund in court, who took the borrower's bond therefor with surety. The surety resisted payment on the ground that the bond was executed to operate as a replevin bond, and that, no execution having been issued on it for more than a year after it became due, he was released by section 11, c. 97, p. 400, Revised Statutes, which provides that a surety in a bond having the force of a judgment shall be released when there is a failure for one year to have execution issued. The court held that that provision did not apply to judicial bonds, the collection of which by execution rule, or attachment must be controlled by the court alone as to the time and manner of enforcement. In the case of Turner v. Rankin, 80 Ky., 179, the same question was involved, as the facts were substantially the same; and, while the court in the latter case held the sureties were released, it reaffirmed the doctrine of Rankin v. White in so far as it held the collection of the bond was under the

control of the court. In neither of these cases did the court discuss the powers generally of commissioners to receive money on bonds executed in the course of a judicial proceeding payable to them, but assumed that they could only receive money when ordered by the court to do so, in the class of cases then under consideration. As to the purpose of appointing commissioners and their duties, this court, in the case of Honore v. Colmesnil, 1 J. J. Marsh., 511, said: "The permanent master in chancery, known to the English courts, is unknown here. We, under an act of Virginia (1 Dig. L. K., 226), have substituted in his place a commissioner or auditor *pro hac vice.* The object of the law in providing for the appointment of the commissioner is to save time of the court; and it is his duty, when appointed, to do those things, and those only, which are required of him by the order of court, and, if he transcends the authority given him by the court, his acts are nugatory." While it is a general rule that commissioners of courts only have authority to do such acts as are ordered by the court, the right of the Legislature to define the duties of master commissioners can not be questioned. The office is created by its act, and the one who fills it is authorized to do whatever is sanctioned by the law for his government. Of course, as the court interprets the law the commissioner must follow it, besides perform all lawful acts ordered by the court. So then it follows that, if the statutory law authorizes a master commissioner to collect sale bonds payable to him when taken for the purchase money of property sold under an order of court, then the general rule which formerly circumscribed the duties of commissioners of courts of chancery must yield to legislative enactments. Section 697, Civil Code Practice, reads as follows: "(1) The purchaser of property sold under an

order of court shall give bond for the price, with good
surety approved by the officer making the sale, payable to
him or to the person entitled to receive the money, as the
court may direct; or, if the court make no order on the sub-
ject, they shall be made payable to the officer. . . .
(3) They shall have the force of judgments; and on execu-
tions issued upon them no replevy·shall be allowed, and
sales shall be for cash." Section 1676, Kentucky Statutes,
reads as follows: "Every bond taken on the sale of pro-
perty under an order of judgment in chancery . . . shall
have the force and effect of a judgment, and on which, if
not paid at maturity, an execution may issue." It will be
observed that by the section of Code quoted the commis-
sioner is authorized to take bonds to himself for property
which he sells under a judgment of the court, when the
judgment does not direct it to be taken to some one else.
The section of the statute quoted provides that on bonds
taken by a commissioner for property sold under an order
or judgment in chancery an execution may issue if not paid
at maturity. This section evidently contemplates that the
person to whom they are made payable shall have author-
ity to have an execution issued if they are not paid at ma-
turity; otherwise, in the absence of some order giving the
fund to some one other than the payee, no one could have
the execution issued. It would be an idle thing for the law
to provide that an execution may issue on a bond, and then
not allow the one to whom it is payable to have it done. It
certainly would be an anomalous condition to authorize the
payee to have it issued, and still not authorize him to re-
ceive the money after it was collected on the execution. It
would be a strange construction of the statute which would
allow the payee in the bond to collect the money on the
bond by execution, and not allow him to receive it without

such process.  Sale bonds often mature between terms of court, when, to save part of the fund, it may be important that an execution should issue.  Besides, by the terms of the contract which the purchaser makes through the court, when his debt is due he is entitled to pay it.  The bond which he executes designates the payee.  In this class of cases, when the commissioner takes bond payable to himself, as provided in the section of the Code referred to, and in cases when he takes the bond payable to himself by order of the court, he is authorized to collect the money on the sale bond.  If he fails to pay it over to the parties entitled thereto, his sureties on his bond can be made to account for it.  We do not think this conclusion is in conflict with the doctrine of the cases of Rankin v. White and Turner v. Rankin.  The judgment is affirmed.  Whole court sitting.