## Fleming v. Commonwealth.

(Decided February 7, 1928.)

## Appeal from Pike Circuit Court.

1. Homicide.—In prosecution for murder, evidence held sufficient to sustain conviction.

2. Criminal Law.—Alleged error in failure of transcript to show that jury was impaneled or sworn, or that defendant was arraigned or pleaded to indictment will not be considered on appeal, where not relied on in motion and grounds for new trial, though requirement for reading indictment and stating plea of defendant to jury is mandatory.

3. Indictment and Information.—Indictment in prosecution for murder, charging defendant with the offense of murder by shooting a certain person and beating him with a pistol, and that such person did thereby die, held sufficient, under Criminal Code of Practice, sec 122, requiring indictment to contain statement of facts constituting offense in ordinary and concise language so as to enable person of common understanding to know what is intended.

F. M. BURKE for appellant.

J. W. CAMMACK, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The Attorney General has entered a motion to strike the bill of exceptions from the record in this case and to dismiss the appeal on the ground that the record was not filed in time. He suggests that the transcript must be filed in the office of the clerk of the Court of Appeals within 60 days after the judgment was entered in the circuit court. This question was disposed of in the case of Commonwealth v. Crouch, 170 Ky. 772, 186 S. W. 674, where it was held that the transcript of the record may be filed with the clerk of the Court of Appeals within 60 days after the bill of exceptions is made a part of the record. It is suggested by the Attorney General that the transcript does not show that the bill of exceptions was made a part of the record by order, but in that he appears to be mistaken as there is an order showing that the bill of exceptions was signed and approved by the court and made a part of the record. It is next suggested by the Attorney General that time was given until a day certain at the next term after the trial in which to file a bill of

exceptions, and that prior to that day an order was entered extending the time to file the bill of exceptions to a day certain in the following term, and that a circuit court does not have the power in any event to extend the time for filing a bill of exceptions to a time beyond a day in the succeeding term after the trial. His contention appears to be suported by the case of McNeal's Adm'r v. Norfolk & W. R. Company, 185 Ky. 197, 214 S. W. 888. The case of Baker v. Whittaker, 185 Ky. 492, 215 S. W. 178, is to the same effect, although in neither of these cases was there an order of the circuit court extending the time to a day certain in a term beyond the succeeding term, and probably there was no order giving time until the succeeding term in which to file the bill of exceptions. If we treat the provision of section 334 of the Civil Code, that time cannot be given beyond a day in the succeeding term in which to file a bill of exceptions, as mandatory, and it seems to have been so held, the circuit court could not extend the time for filing a bill of exceptions beyond the succeeding term. This case had been submitted when the motion to dismiss was entered, and without deciding whether the motion came too late we have concluded to give appellant the benefit of the doubt and dispose of the case on its merits.

Appellant shot and killed Ben Bentley, and he was charged by the grand jury with the crime of murder. A jury found him guilty of manslaughter and fixed his punishment at two years in the penitentiary. Two errors only are pointed out by counsel for appellant. One is that the court should have directed the jury to find appellant not guilty on the ground that the evidence was not sufficient to sustain a conviction. Bentley and appellant had been friends from their boyhood, but a few months before Bentley was killed he had caused the death of appellant's father in an automobile accident which engendered bad feelings. Appellant had made some threats to the effect that he would take revenge on Bentley, but he testified that after becoming more familiar with the facts connected with the accident he had become reconciled, and that he held no ill will towards Bentley because of the accident in which his father was killed. Bentley went to the home of appellant on the day of the killing armed with a pistol and inquired whether appellant had anything against him. Upon being assured by appellant

that he had nothing against him, he asked if he might remain there for dinner with appellant and his family. Dinner was prepared for him, and during its preparation Bentley was disorderly and flourished his pistol. After dinner was over Bentley left the home of appellant and went away for a few hours, but thereafter returned and found appellant near his home engaged in a conversation with two or three other people. Bentley asked one of the men standing by whether he had any whisky, and, receiving a negative answer, he displayed his pistol and stated that he had whisky and also that he had that which was necessary to make up the difference. Appellant requested him to give up his pistol, saying to him at the time that he might kill some one, but Bentley refused to surrender his pistol, and he and appellant had a scuffle over the pistol, during which time the pistol was fired twice and appellant was wounded in the back and his clothing was set on fire by the discharge from the pistol. They were separated when Bentley struck appellant viciously over the head with the pistol. He left appellant and retreated for a short distance down the road with the appellant following him, when he again fired, and proceeded further down the road. Appellant fired at him before he started down the road the second time, and as he proceeded down the road appellant, followed him, and when he caught up with him he killed him. There was some testimony that Bentley dropped his pistol as he went down the road and appellant procured it as he passed by where it had fallen. There is testimony that appellant said he killed Bentley with Bentley's pistol. He remarked to some one after he had returned from where he had shot appellant that he had killed him "deader than hell." This statement was denied by appellant and some of the witnesses which he introduced. That appellant was badly mistreated by Bentley is thoroughly established by the evidence, but there was enough evidence to take the case to the jury on the question as to whether appellant killed Bentley in his necessary, or apparently necessary, self-defense. The verdict of the jury is not so flagrantly against the weight of the evidence as to justify this court in reversing the case on that ground.

The second ground relied on for reversal is that the transcript does not contain an order showing that the jury was impaneled or sworn, or that appellant was ar-

raigned or pleaded to the indictment. This ground was not relied on in the motion and grounds for a new trial. For that reason we cannot consider this ground. Thompson v. Com., 122 Ky. 501, 91 S. W. 701, 28 Ky. Law Rep. 1137. The requirement that the indictment shall be read and the plea of the defendant stated to the jury is mandatory, and a party cannot be convicted unless it is substantially complied with. Farris v. Com., 111 Ky. 236, 63 S. W. 615, 23 Ky. Law Rep. 580; Meece v. Com., 78 Ky. 586. But in the last-cited case the record did not disclose that the prisoner was arraigned or any plea entered in his behalf, and this court was asked to reverse the judgment for that reason. The court declined to reverse the judgment on that ground because it was manifest from the entire record that an issue was made and that the accused had a fair and impartial trial. Again, in the case of Ison v. Com., 110 Ky. 112, 60 S. W. 1125, 22 Ky. Law Rep. 1588, it was held there could be no reversal for a failure to read the indictment to the jury unless it had been assigned as one of the grounds for a new trial. The error relied on by appellant that the transcript does not show that a jury was impaneled or sworn, or that a plea of not guilty was entered by the appellant, cannot be raised for the first time in this court.

It is also suggested by counsel for appellant that the indictment on which he was convicted is not sufficient. His complaint on this point is that the indictment does not charge that the pistol with which appellant shot Bentley was "loaded with powder and leaden ball," or words of similar import. The indictment charges that appellant committed the offense of murder "by shooting Ben Bentley and beating him with a pistol, and the said Bentley did thereby die." Appellant was not misled by the language used in the indictment. He knew exactly the offense with which he was charged. By the provisions of section 122 of the Criminal Code the indictment is required to contain a statement of the acts constituting the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is intended. The indictment was sufficient.

Judgment is affirmed.