CASE 121—INDICTMENT—OCTOBER 6.

# Meece v. The Commonwealth.

APPEAL FROM LARUE CIRCUIT COURT.

1. The law of the case, as presented to the jury by the circuit court, was more favorable to the appellant than the facts warranted.

2. The Criminal Code requires that the jury be kept together until a verdict is found, and if they find and report it on Sunday, and the court renders the judgment on the Monday following, both the verdict and judgment are valid.

3. Although the orders fail to show that a plea of "not guilty" was entered, it is manifest from the entire record that an issue was made, and that the appellant had a fair and impartial trial.

4. The presence of the accused when instructions are given or modified is essential to the ends of justice; but this court will not reverse in case he is not present, unless, considering the whole record, it is of the opinion that his substantial rights have been prejudiced thereby.

WILSON & HOBSON FOR APPELLANT.

1. The record does not show that appellant was arraigned, and does not show that he made the plea of not guilty, or any other plea. (Crim. Code, secs. 154, 174; 22 Ill., 372; 84 Ill., 87.)

2. The verdict was rendered by the jury on Sunday, and is void. (Arthur v. Mosby, 2 Bibb, 589; Brown v. McKee, 1 J. J. Mar., 473; Long v. Hughes, 1 Duv., 387; 2 Ib., 438; Crim. Code, 253.)

3. After the case had been submitted to the jury, they returned into court, and asked and received further instructions, during all which time appellant was kept in jail, and not permitted to be present in court. (Temple v. Commonwealth, 14 Bush, 770; 5 Caldwell (Tenn.), 11; Phillips' Law Rep., N. C., 3; 43 N. Y, 1; 12 Fla., 562; 20 Ohio, 31; 13 Grattan, 763; 13 Fla., 562; 19 Ark., 205; .Ib., 214; 24 Ib., 620; Ib., 629; 5 Cal., 72; 23 Ib., 158; 27 Mo., 332; 6 Penn., 384.)

Meece v. The Commonwealth.

4. The jury was separated after the submission of the case to them and before the verdict. (24 Cal., 337; 22 Ib., 348; 7 N. H., 287; 22 Ill., 375; 44 Ib., 508; 21 La., 321; Commonwealth v. Shields, 2 Bush, 82.)
5. The instructions given to the jury at the instance of appellee are erroneous.

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

There is no error in the record to the prejudice of the appellant. .

1. That the verdict was rendered and received on Sunday is no ground of reversal. (Watts v. Commonwealth, 5 Bush, 309.) In that case this court held that a party may be arrested for a felony on Sunday, admitted to bail on that day, and a valid bail bond be taken on Sunday. In the case of Commonwealth v. Morrow (3 Penn. Rep.), it is held, the receiving of a verdict on Sunday, being a merely ministerial act, was not void, although done on Sunday. (Crim. Code, sec. 253.)
2. The jury received no evidence out of court. The trial was not commenced or completed in appellant's absence.
3. The instructions are in conformity with the law.

W. H. CHELF FOR APPELLEE.

1. The court below committed no error in instructing the jury or in refusing to instruct at the instance of appellant.
2. That the verdict was rendered on Sunday is no error. It is not to appellant's prejudice, nor does it affect his substantial rights. (Crim. Code, secs. 340, 281, 276, 287; Kennedy v. Commonwealth, 13 Bush, 344.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, George Meece, having been indicted for the murder of Jack Gardner, was tried and convicted of manslaughter in the Larue circuit court, and sentenced to hard labor in the state prison for twenty-one years. He is in this court asking a reversal of the judgment. Upon the facts of the record it would have been difficult to have given an instruction prejudicial to the substantial rights of the accused. It was a killing without justification or excuse, and the law of the case as presented to the jury was more favorable to the accused than the facts warranted. The first question necessary to be considered is in reference to the action of the court in receiving the verdict on Sunday. After a long and

tedious trial, the case was submitted to the jury on Saturday, about twelve o'clock, and on the evening of that day the court was adjourned until the following Monday, and the jury placed in charge of the sheriff. At eleven o'clock on Sunday morning the jury agreed on a verdict, and the judge being informed of the fact, appeared in the court-room, and there received the verdict in the usual manner, in the presence of the prisoner and his counsel, and discharged the jury. No objection was made to this proceeding until the court was about to sentence the accused, which was on Monday following, when for the first time it was objected that the verdict was void, having been rendered on the Sabbath day. The authorities are to the effect that Sunday is not a judicial day; still, many of the reported cases on the subject sustain verdicts rendered on that day in both civil and criminal cases.

Some of the cases proceed on the idea that the delivery of the verdict is a mere ministerial act, while others place it on the ground of necessity, and hold that such proceedings are not void when the judgment on the verdict is entered on a subsequent day other than Sunday. Section 253 of the Criminal Code, with reference to cases submitted to a jury, provides, that ''while the jury are absent the court may adjourn from time to time as to other business, but it shall be deemed open for every purpose connected with the cause submitted to the jury until a verdict is rendered or the jury discharged.''

The jury was compelled to consider the case on the Sabbath, or, if not, was in charge of the sheriff, with no power to adjourn or separate until the case was disposed of. When ready to deliver their verdict, it was more consistent with the observance of the Sabbath as a day of rest and for re-

ligious worship to permit the jury to go to their homes that they might attend to their religious duties, than to keep them confined in their room for the purpose of deliberating upon and determining the fate of the accused. It was in fact an act of charity toward the jury to discharge them, under the circumstances. In a civil case this court would be inclined to hold otherwise, as there is no law, arising from necessity or otherwise, requiring them to be kept together until a verdict is agreed on or the jury discharged. The accused was present in person and by counsel, and no injustice has been done him by the verdict rendered; and while we are not disposed to sanction any violation of the Sabbath, we are satisfied the verdict in this instance is not void, but authorized a judgment upon it at a subsequent day other than Sunday.

It is no more a violation of the Sabbath to receive the verdict than to keep the jury locked up that they may consider the case.

It is urged by counsel that the record fails to disclose the fact that the prisoner was arraigned, or that any plea was entered in his behalf, and for that reason this court should reverse the judgment of conviction. The record fails to show that the plea of not guilty was entered, but it is manifest from the entire record that an issue was made, and the accused had a fair and an impartial trial. The court was engaged for several days in the trial of the cause; and after numerous witnesses had been examined on the part of the Commonwealth and the defense with reference to the killing, the court gave nine instructions. In one the jury was told what constituted the crime of murder, and in another the crime of manslaughter, and further, that the burden of proof was on the Commonwealth to show the guilt of the accused

beyond a reasonable doubt; that the law presumed the ac-
cused innocent, and it was the duty of the jury to reconcile
and harmonize the evidence, if they could consistently, with
the innocence of the accused. The jury was also told that
if the accused did the killing, and had reasonable grounds at
the time to believe, and did believe, that he was in immedi-
ate danger of losing his life or suffering great bodily harm at
the hands of the deceased, then the accused had the right to
use such force as was necessary to protect himself, even to
slaying the deceased, although in point of fact it turned out
he was in no danger whatever.

The law of the case as given was more favorable to the
accused than the facts authorized, and an issue directly made
by the instructions as to the killing, and whether or not the
accused acted in self-defense.

It was a mere omission of the clerk to enter the plea of
not guilty, and although not on the record, the instructions
show plainly what the issue was. When the judgment of
conviction was pronounced the prisoner was informed of the
nature of the indictment, the verdict, and the plea entered
by him, and yet the question is made for the first time in this
court that no plea was entered by the accused or issue raised.

The accused was present during the progress of the trial
and until his case was finally submitted to the jury, and the
attention of the court was at no time called to the fact that
the plea had not been entered of record. It would be a
mockery of justice, as well as trifling with the action of the
court below, to hold that no legal trial was had upon the
facts of this case. The court, in attempting to distinguish
between the crime of murder and that of manslaughter, told
the jury that if there had not been sufficient time between
the difficulty at the store and the time at which the shooting

took place for his passion to cool, &c., they ought to find the killing was done in sudden heat *and passion, and, in arriving at a conclusion on this point, the jury must take into consideration all the facts and circumstances proven in the case.* The jury, after retiring, came into court and asked for further instructions. The court declined to give any, but, in the presence of the counsel for the prisoner, inserted in the last instruction noticed the words, *"in arriving at a conclusion on this point, the jury must take into consideration all the facts and circumstances proven in the case."* The accused was absent at the time, and it is urged that, for this reason, the judgment should be reversed. While we recognize the fact that the accused, when on trial for a criminal offense, should be present during the entire trial, and that no evidence should be heard or instructions given or amended without his presence either before or after the submission of the cause to the jury, still this court is only authorized to reverse in cases where the substantial rights of the accused have been prejudiced in the court below, and in order to ascertain whether errors have been committed to the prejudice of the accused, the facts as well as the law of the case should be considered. While one charged with a criminal offense has the constitutional right to be tried by a jury, the right of appeal from the verdict and judgment against him does not exist, except by reason of the legislation of the state on the subject, and when permitting an appeal the law-making power has the right to determine for what cause a reversal may be had.

The accused and Gardner had a difficulty on the morning of the day preceding the night of the killing. The accused originated the trouble by abusing Gardner because his brother had employed a lawyer to assist a negro who was litigating

with the accused; and when engaged in the fight, Gardner struck the accused on the head with a hatchet. The parties were separated, and Gardner in a short time returned and invited all the parties present to drink with him. The deceased declined to drink, for the reason that he never used intoxicating liquors. The accused remarked that he intended to make that day memorable. On the following night, about nine o'clock, the horses of the deceased jumped into his neighbor's wheat-field, and the deceased learning the fact, got out of his bed, and when about to open the gate to let his horses out, was shot and killed, without even a warning, by the accused. This is the substance of the testimony, and presents all the mitigating circumstances (if any) relied on by the defense, except the fact that it was attempted to be proven the accused was at the time intoxicated. On these facts the qualification of the instruction no doubt caused the jury to return a verdict of manslaughter instead of murder, and when resulting in a benefit to the accused, that fact is now relied on as a reason for reversing this judgment, when the whole record shows that the killing was without palliation, justification, or excuse.

The presence of the accused may be, and certainly is, essential to the ends of justice in the trial of all criminal offenses when his life or liberty is involved. When instructions are given by the court, or when the jury, returning from their room, desire to be further instructed, the presence of the accused is of the greatest importance, as he may be able to suggest to the court or his counsel some information that would throw additional light on his defense. He should also be present that he may except to the ruling of the court; but while this is the case, the court to which his appeal is presented is not authorized to reverse the

judgment against him, unless, when considering the whole case, it clearly appears that his substantial rights have been prejudiced by the ruling below. One charged with the commission of a felony cannot be tried during his absence from the court-room, and when any step is taken during the trial in the absence of the prisoner, the record must show affirmatively that he could in nowise have been prejudiced by it, else this court will reverse the judgment. The evidence in this case is so plain as to the guilt of the accused and the enormity of the offense, that no slighter punishment could have been inflicted, and we are satisfied the ends of justice require that the judgment should be affirmed.

Judgment affirmed.