# DECISIONS

OF THE

# Court of Appeals of Kentucky.

## APRIL TERM, 1904.

CASE 1—PROSECUTION AGAINST JAMES B. HOWARD FOR THE MURDER OF
WILLIAM GOEBEL—THIRD TRIAL—APRIL 22.

## Howard v. Commonwealth.

APPEAL FROM FRANKLIN CIRCUIT COURT—JAS. E. CANTRILL, CIRCUIT
JUDGE.

DEFENDANT CONVICTED AND GIVEN LIFE SENTENCE IN PENITENTIARY, AND
APPEALS. AFFIRMED.

- CRIMINAL PROSECUTION—JURY—ERRORS IN SELECTING—ABSENCE OF
ACCUSED—GROUNDS FOR REVERSAL—TESTIMONY BEFORE GRAND
JURY—NOTES OF COMMONWEALTH'S ATTORNEY—RIGHT OF INSPEC-
TION BY ACCUSED—WITNESSES—INCRIMINATING EVIDENCE—CLAIM
OF PRIVILEGE—CROSS EXAMINATION—DISCRETION—TESTIMONY OF
WIFE—CONTRADICTION OF HUSBAND—ACCOMPLICES—CORROBORAT-
ING EVIDENCE—SCOPE OF INQUIRY.

1 Under Cr. Code, section- 281, providing that the decisions of
the court upon challenges to the panel and for cause shall not be
subject to exception, the court of appeals can not reverse a con-
viction in a criminal case because in the court's order for sum-
moning jurors from another county it was not required that
they should be drawn from the jury wheel of that county, but
only that they be summoned from the county at large by the
sheriffs of the county of trial.

2. It is not ground for reversal of a trial for felony that during the
impaneling of the jury the court, with appellant's consent, ex-

amined a juror in appellant's absence touching his opinion of the case, and excused him.

3. It is proper in a criminal prosecution to refuse to require the Commonwealth's attorney to surrender for accused's inspection notes of the testimony given before the grand jury.

4. Where, in a prosecution for murder, accused calls one jointly indicted with himself as a witness, who, without objection from the Commonwealth or suggestion from the court, announces that he has been indicted, but not tried, and claims his privilege from being required to give incriminating evidence against himself, it is not error to excuse him from testifying.

5. In prosecution for murder, the direct examination of a principal witness for the Commonwealth covered ten pages of the bill of evidence, and his first cross-examination 180 pages. During this cross-examination he was on the stand three days. Afterwards he was again cross-examined at great length, and finally dismissed. HELD, that it was not an abuse of discretion to refuse to permit a third cross-examination.

6. Under Civ. Code Prac., sec. 606, providing that neither a husband nor wife shall testify concerning any communication between them during marriage, nor shall either of them testify against the other, the evidence of a wife is inadmissible in a criminal prosecution to contradict her husband, who appears as the principal witness for the Commonwealth, though her evidence was merely the identification of a letter from her husband.

7. Where, in a prosecution for murder, the only persons claiming to have personal knowledge of accused's guilt were his accomplices, who therefore required corroboration under Cr. Code, section 241, and the corroborating evidence was necessarily circumstantial, it was not error to admit testimony of witnesses, though remote and fragmentary as to statements made by accused, similar statements having been testified to by another witness.

W. M. SMITH, ATTORNEY FOR APPELLANT.

J. A. VIOLETT, J. A. SCOTT, CARLO LITTLE, OF COUNSEL.

1. The sole question in this case is whether or not the accused, James B. Howard, fired the shot that killed Senator William Goebel.

2. While there may be evidence tending to show that the accused fired the fatal shot, we insist that there is not a scintilla of evidence even tending in the remotest degree to connect him in any way with any conspiracy or plan to assassinate Senator Goebel, or to do any other violence in connection with said matter,

or that he aided, abetted, or assisted therein, if it be true that he did not fire the fatal shot.

3. We earnestly contend that this sole question by the instructions should have been submitted to the jury, and that the court, by reason of going further in the instructions, thereby misled the jury to the prejudice of the accused.

4. While other errors are alleged, the following are specially relied on for reversal:

(1) Because the court erred in the formation of the jury.

(2) Because the court erred to the prejudice of the defendant in failing to grant a new trial on account of the disqualification of the jurors who decided the case, of which defendant was not cognizant until after the rendition of the verdict.

(3) Because the court erred in the admission of certain testimony, and in the refusal to admit certain testimony.

(4) The court erred in refusing to strike certain testimony from the record.

(5) The court erred in giving instructions one, two, three, four and five, and in refusing to give instructions one, two, three, four and five, offered by the defendant, and in failing to give the jury the whole law applicable to the case.

(6) Because of misconduct of counsel for the prosecution in the argument of the case to the jury.

B. G. WILLIAMS, ATTORNEY FOR THE COMMONWEALTH.

R. B. FRANKLIN, T. C. CAMPBELL, L. W. ARNETT, W. O. DAVIS, ROBT. STOUT, OF COUNSEL.


### POINTS AND AUTHORITIES.

1. The court had the right to discharge Alexander at any time before the jury was sworn to try the issue. Sec. 281, Crim Code; Taylor v. Combs, 20 L. R., 1828; Terrell v. Commonwealth, 13 Bush, 251; Sec. 202, Crim. Code; Shelby v. Commonwealth, 91 Ky., 563; Monday v. Commonwealth, 81 Ky., 233; Rutherford v. Commonwealth, 13 Bush, 608; Rutherford v. Commonwealth, 78 Ky., 639; Curtis v. Commonwealth, 23 L. R., 267; Kennedy v. Commonwealth, 14 Bush, 340; Redmon v. Commonwealth, 82 Ky., 323.

2. Decision of the trial court upon a motion for a new trial is not subject to exceptions. Sec. 281, Crim. Code.

Also see authorities just cited which bear upon this point.

3. Witness is not compelled to answer any question which might tend to criminate him. Robertson on Ky. Crim.

Law and Procedure, vol. 2, p. 1088, sec. 980; Burdette v. Commonwealth, 93 Ky., 79; Charles Counselman Aptt., v. Frank Hitchcock Marshall, 142 U. S., 547; 1st Greenleaf's Ev., sec. 451.

4. The defendant has no rights to the minutes of the grand jury. Franklin v. Commonwealth, 20 L. R., 1137; sec. 112 of the Crim. Code; sec. 113 of the Crim Code.

5. Confidential communication by husband to wife, not to be proven by wife. Sec. 606, Civil Code; Commonwealth v. Sapp, 90 Ky., 585.

6. Instructions passed upon. Howard v. Commonwealth, 22 L. R., 1849; Powers v. Commonwealth, 22 L. R., 1877; Howard v. Commonwealth, 24 L. R., 1232.

7. Should be no reversal. Secs. 342, 357, Crim. Code; Howard v. Commonwealth, 22 L. R., 1860.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

The appellant, James B. Howard, was tried and convicted the third time in the Franklin circuit court under an indictment returned in that court against him and others, charging them with the murder of William Goebel, and his punishment fixed by the verdict of the jury and sentence of the court at imprisonment in the penitentiary for life. His motion for a new trial was overruled by the lower court, and by this appeal he seeks a reversal of the judgment of conviction.

There have been two former appeals herein. See Howard v. Commonwealth, 61 S. W., 756, 22 Ky. Law Rep., 1845; Id., 70 S. W., 1055, 24 Ky. Law Rep., 1225. As the principal facts connected with the crime for which appellant was convicted were stated and commented on in the opinions of this court on the former appeals we deem it unnecessary to enter upon a recital of them in this opinion. Suffice it to say that the evidence shows that Hon. William Goebel, on January 30, 1900, in Frankfort, and on the Capitol Square, while approaching the main

entrance of the State House, was shot and wounded by some one in concealment, of which wound he in a short time thereafter died. It has been and is the theory of counsel for the Commonwealth that the bullet which deprived him of his life was fired by the appellant, though others are charged and jointly indicted with him as aiders and abettors in the crime. There were twenty-one grounds for a new trial filed by appellant in the lower court, several of which were relied on by him on the former appeals, and were then held by this court insufficient to authorize a reversal. It will therefore be unnecessary for us to again consider such of them as were then determined. Indeed, we feel called upon to discuss and pass upon only such of the grounds for reversal as were urged by counsel for appellant in argument before us, and will consider them in the order in which they were presented.

First. It is contended that the court erred in the formation of the jury, in that by its order for the summoning of 150 jurors from the county of Woodford it was not required that they be drawn from the jury wheel or drum of that county, but only that they be summoned from the county at large by the sheriff of Franklin county. In Curtis v. Commonwealth, 62 S. W., 886, 23 Ky. Law Rep., 267, it was held that the manner of selecting the jury in that case was error, but, as section 281 of the Criminal Code of Practice provides that "the decisions of the court upon challenges to the panel and for cause, upon motions to set aside an indictment, and upon motions for a new trial, shall not be subject to exception," this court is without power to revise such an error. In several cases subsequently decided—the most recent being that of Turner v. Commonwealth, 25 R., 2161, 80 S. W., 197, the opinion in which is yet unpublished—the rule announced in Curtis

v. Commonwealth, supra, was adhered to and approved. We find it unnecessary, therefore, to decide whether or not there was error in the manner of summoning the jury, or in its formation, as a reversal by this court upon that ground, even if such error had been committed, would be unauthorized.

Another alleged error complained of by appellant was the discharge by the trial court of the juror, J. C. Alexander. It appears that he and ten others had been accepted by the parties as jurors, and that but one other was to be selected in order to complete the panel of twelve. The Commonwealth had then exhausted three of its peremptory challenges, and the appellant twelve of his, though neither party had been required to or had exercised the right of peremptory challenge, except as there were twelve men in the jury box who had upon the *voirs dire* been found qualified. At this point it was suggested to the court by the Commonwealth's attorney, out of the hearing of the jury that had thus been partly made up, that he had just received information to the effect that J. C. Alexander had theretofore formed and expressed an opinion as to the merits of this case, and with respect to the crime charged in the indictment, and had, after he was accepted on the jury, improperly conversed with a person not a member of the jury on a subject connected with the case, notwithstanding the previous admonition of the court not to do so. This communication of the Commonwealth's attorney was immediately followed by a motion from him to discharge Alexander from the jury, in support of which was filed the affidavit of Ben Hackett, who had himself been excused as a juror in the case. It was stated in the affidavit, in substance, that the affiant and Alexander, after the death of William Goebel, had many conversa-

tions and arguments about the killing, in which affiant contended that there had been a conspiracy to murder Goebel, among those who were charged with his murder, and Alexander expressed and urged the opinion that there had not been such a conspiracy; that in these conversations both affiant and Alexander manifested much earnest interest and feeling; and, further, that after Alexander and some other members of the jury had been accepted, put in charge of the sheriff, and admonished by the court, he said to the affiant, after adjournment on the day before the filing of the affidavit, and as the jury were passing out through the court house yard, "Hello, Ben, I am glad they cut you off of this jury, as I did not want to serve on this jury with you." Before passing upon the motion of the Commonwealth's attorney, the court privately examined Alexander, while the latter was in the custody of the sheriff, touching the truth of the charges contained in the affidavit of Hackett, and as the result of such examination discharged him from the jury. It was stated by counsel for the Commonwealth in the oral argument and by brief in this court, and not denied in the oral argument or brief of counsel for appellant, that the examination of Alexander was conducted privately by the court at the request of counsel for appellant, made in the latter's presence, and with his consent. Be that as it may, in ascertaining what transpired in the lower court in this case, we must look to and be governed by the record made therein, and it appears from the record that the privy examination of Alexander was made by consent of the parties, though it further appears that appellant at the time of the discharge of Alexander excepted to such discharge, and moved the court to also discharge the ten persons remaining of the jury, which the court refused to

do, but proceeded to complete the jury, subject to the right
of challenge by either party to the extent of the challenges
remaining to them, by selecting from the persons sum-
moned from Woodford county for that purpose the two
necessary to complete the panel of twelve.

As what occurred in the privy examination of Alexander
does not appear in the bill of exceptions, we are unable to
know whether he admitted or denied the statements made
in the affidavit of Hackett, except that it does appear in
the bill of exceptions that he made the admission—pre-
sumably before the privy examination—that he said to
Hackett, after the latter had been excused from the jury
and he had been accepted as a member thereof, "Hello,
Ben, I am glad that they cut you off of this jury, as I
did not want to serve on this jury with you," but claimed
that it was made in a jocular way. It is insisted for the
Commonwealth that Alexander's admission as to the above
statement warrants the conclusion that what was said in
the affidavit of Hackett as to arguments between Alex-
ander and himself involving the merits of this case is true,
otherwise what reason did Alexander have for not wishing
to serve with Hackett on the jury? In this view of the
matter it is argued that the action of the lower court in
discharging Alexander from the jury was not an abuse
of discretion. Upon the other hand, it is insisted for ap-
pellant, that it was error for the court to examine Alex-
ander in his absence, and that he could not legally waive
his right to be present at such examination. In support
of this contention, section 183, Criminal Code, is relied on,
which provides: "If the indictment be for a felony, the
defendant must be present, and shall remain in actual
custody during the trial. . . . " While this court,
in construing the section supra, has repeatedly held that

one charged with the commission of a felony can not be tried during his absence from the court room, we find that cases have arisen in which it has been deemed necessary to relax that rule. Thus, in Hite v. Commonwealth, 20 S. W., 217, 14 Ky. Law Rep., 308, it was held that the occasional absence from the court room of the accused, on account of temporary illness, for a few minutes at a time, the trial continuing in his absence, did not prejudice the substantial rights of the accused. In Meece v. Commonwealth, 78 Ky., 586, it appeared that after the submission of the case to the jury, and their retirement to the jury room they returned into court and asked for further instructions. The court declined to give any, but in the presence of counsel for the prisoner inserted by interlineation certain words in one of the instructions. The accused was absent at the time, and it was urged in his behalf that for this reason the judgment should have been reversed. This court, however, held otherwise, in doing which it said: "While we recognize the fact that the accused, when on trial for a criminal offense, should be present during the entire trial, and that no evidence should be heard or instructions given or amended without his presence, either before or after the submission of the cause to the jury, still this court is only authorized to reverse in cases where the substantial rights of the accused have been prejudiced in the court below; and, in order to ascertain whether errors have been committed to the prejudice of the accused, the facts as well as the law of the case should be considered. While one charged with a criminal offense has the constitutional right to be tried by a jury, the right of appeal from the verdict and judgment against him does not exist, except by the legislation of the State on the subject, and when permitting an appeal

the lawmaking power has the right to determine for what
cause a reversal may be had. . . ." It has also been
held by this court that a trial for felony begins when the
jury is sworn. Willis v. Commonwealth, 85 Ky., 68, 8 R.,
653, 2 S. W., 654. At the time the examination of Alex-
ander took place, and when he was discharged, the jury
had not only not been sworn, but it had not been completed.
There are many rights, some of them guaranteed by the
Constitution, which one charged with crime may not waive,
and should not be permitted by the courts to waive—such
as the right of trial by jury, the right to be heard by him-
self and counsel, to demand the nature and cause of the
accusation against him, and yet others, the assertion of
which may unexpectedly become necessary for his protec-
tion during the progress of the trial. But we are unwilling
to say that one charged with felony, and being in court,
as was the appellant, with counsel at hand ready and
competent to advise him of his rights, may not, in advance
of the swearing of the jury, and before he is placed in
jeopardy, consent to a private examination by the court
of a juror against whom complaint had been made, for the
purpose of ascertaining whether he was qualified to retain
his place as one of the jury to try the case. Nor do we
think it is affirmatively shown by the record in this case
that any injury resulted to the substantial rights of the
appellant by Alexander's dismissal from the jury. It is
however, beyond our province to reverse this case for error,
if there were any, in excluding Alexander from the jury.
Our right to do so is expressly forbidden by section 281
of the Criminal Code, and we have already referred to
Curtis v. Commonwealth, 62 S. W., 886, 23 Ky. Law Rep.,
267, and Turner v. Commonwealth, supra, to indicate this
court's construction of that section. In addition to those

cases, a further recent authoritative utterance of this court
to the same effect will be found in Alderson v. Common-
wealth, 74 S. W., 679, 25 Ky. Law Rep., 32, in which one
of the grounds for reversal, as set forth in the record,
was that the appellant, over his objection at the time,
was forced by the trial court to accept as jurymen persons
alleged to have formed an opinion as to his guilt or inno-
cence.

Another alleged error was that after the Commonwealth
had accepted in open court the full panel of twelve jury-
men, and after they had been passed to the appellant for
acceptance or peremptory challenge, and he and his counsel
had retired from the court house to determine whether they
would accept the panel, the court, over appellant's objec-
tion, permitted the Commonwealth to object to and excuse
one of the jurymen without cause, though the whole twelve
had been accepted by it; whereupon appellant, as was done
in the case at bar, moved the court to dismiss the entire jury,
which motion was overruled. In passing on the questions
thus presented, this court, after quoting section
281 of the Criminal Code, supra, said: "In con-
struing this section we have uniformly held
that errors in the manner in which the jury were
selected, or that a juror lacked the statutory qualifica-
tions, shall not be considered on appeal." Whatever may
be the rule in other States, this question has been settled
in Kentucky as herein indicated, and the authorities cited
are the latest that have emanated from this court.

Another complaint of the appellant is the refusal of the
lower court to require the Commonwealth's attorney to
permit him to examine an alleged original statement, called
the confession of H. E. Youtsey, and the notes of the evi-
dence given by him before the grand jury. The motion of
appellant for those papers was based upon his affidavit. A

response to the motion was filed by the Commonwealth's attorney, in which it was denied that he had, or knew anything of the alleged confession, but admitted that he did have notes of Youtsey's testimony before the grand jury, which he refused to surrender. The court ruled correctly in refusing to require the surrender by the Commonwealth's attorney of the notes of Youtsey's testimony given before the grand jury, as was decided by this court in Franklin v. Commonwealth, 48 S. W., 986, 20 Ky. Law Rep., 1137, in the opinion of which it is said: "It appears from the record that the grand jury reduced to writing the testimony of the witnesses before it, and furnished to the Commonwealth's attorney the evidence so taken. . . . It was the duty of the foreman of the grand jury, also, under the statute, to communicate to the attorney for the Commonwealth, when requested, the substance of the testimony before them. But we do not think the court below should, in the exercise of sound discretion, have required the Commonwealth's attorney to communicate to the defendant the evidence so reported to him by the foreman of the grand jury."

Appellant also complains that the court refused to compel Green Golden to give certain testimony demanded of him. It appears from the record that Golden was jointly indicted with appellant and others for the murder of William Goebel, and that the indictment is still pending against him. Golden was introduced by appellant, and after certain preliminary questions, without objection from the Commonwealth or suggestion from the court, he announced that he had been indicted in this case, but had not been tried, and claimed his privilege, and he was not required to testify, upon the ground that he could not do so without giving evidence against himself. In

Robertson's Criminal Law, volume 2, section 980, it is said: "It is a rule that no person is bound to answer any question if the answer thereto would, in the opinion of the trial judge, have a tendency to subject the witness, or the wife or husband of the witness, to any punishment, penalty, or forfeiture. And the witness may claim the protection at any stage of the inquiry, whether he has already answered the question in part or not at all. If the fact to which he is interrogated forms but one link in the chain of evidence which is to connect him, he is still protected. The privilege is one personal to the witness, and to be exercised by him alone, and counsel will not be allowed to make the objection. Nor can the witness be made to explain how he might be criminated by the answer, as this would strip him of the privilege which the law allows him. But it is not enough for the witness to say that the answer will criminate him. He is not the sole judge of the fact. It is for the court to determine from all the circumstances whether there is really reasonable ground to apprehend danger to him from his being compelled to answer." Burdette v. Commonwealth, 93 Ky., 79, 13 R., 960, 18 S. W., 1011; 1st Greenleaf, section 451. Chief Justice Marshall, in the trial of Aaron Burr, said: "If the question be of such description that an answer to it may or may not incriminate a witness, according to the purport of the answer, it must rest with himself, who alone can tell what it would be to answer the question or not." Burr's Trial, 224. From these authorities the statements of Golden, and his reasons for not testifying, it is manifest that he was entitled to avail himself of the privilege allowed by law, and the court properly excused him from testifying.

It is insisted for appellant that it was error for the trial court to refuse him permission to recall and further cross-

examine H. E. Youtsey. It will be found that the direct
examination of Youtsey comprises 10 pages of volume 3,
of the bill of evidence, and the first cross-examination
180 pages, of that volume. On the first cross-examination,
he appears to have been on the stand about two days,
at the end of which, viz., April 17th, the cross-examination
was suspended, and appellant given until April 20th to pre-
pare for his further cross-examination. On April 21st he was
again cross-examined at great length, and finally dismissed.
On April 23d, appellant asked to be allowed to recall and still
further cross-examine Youtsey for the purpose of laying the
foundation to contradict him by his wife. As will be pres-
ently shown, the expected contradiction would if permitted,
have been incompetent, but aside from this consideration,
after such a long and exhaustive cross-examination as was
given the witness, covering, as it would seem, every pos-
sible aspect of the case and the witness' relation thereto,
we are unwilling to say that it was an abuse of discretion
for the court, under the circumstances, to refuse to permit
him to be recalled the third time for still further cross-
examination. We are of opinion that the court properly
excluded the testimony of Mrs. Youtsey, wife of H. E.
Youtsey. Section 606, Civil Code of Practice, which
is but declaratory of the common law, provides:
"Neither a husband, nor his wife shall testify, even after
the cessation of their marriage, concerning any communi-
cation between them during marriage. Nor shall either
of them testify against the other. Nor shall either of
them testify for the other, except in an action for lost
baggage," etc. In Commonwealth v. Sapp, 90 Ky., 585, 12
R., 484, 14 S. W., 835, 29 Am. St. Rep., 405, it was said by
this court: "If the proposed testimony violates married
confidence in the slightest degree, or tends, however
slightly, to impair the rule for its protection, the highest

considerations forbid its introduction." It will be found that the authorities are uniform in holding that this rule applies, whether such proposed testimony is sought to be introduced in a case where the husband or wife is party or only others are concerned. In Scott v. Commonwealth, 94 Ky., 511, 15 R., 251, 23 S. W., 219, 42 Am. St. Rep, 371, in an able discussion of this doctrine by Judge Lewis, it was held that a letter to the wife from the husband in relation to a crime with which he was charged could not be used in evidence by the Commonwealth, and the case was reversed because of its introduction as evidence. Applying that rule in this case, the note or letter proposed to be identified by Mrs. Youtsey, as well as any other testimony that she might have given in regard thereto, was clearly incompetent, because the same came to her from the husband by reason of the privacy and confidence of the marital relation, and the use of it to contradict him would have been as fully within the reason and as much against the policy of the law as would any other confidential disclosure that he may have made to her. And the same rule that forbade her testifying in this case would have excluded as incompetent any statement from him made to her on the same subject.

Objection is made that the trial court refused to exclude certain testimony of H. E. Youtsey and Frank Cecil, and also the testimony of Jones and Day. We find that such of the testimony of Youtsey as appears to be incompetent was rejected and stricken out by the court. We think all the testimony of the four witnesses named, as it is shown by the bill of evidence to have been admitted by the court, was competent. It related to acts and declarations of the appellant conducing to establish his guilt, as well as a conspiracy to take the life of William

Goebel, in which he was an alleged participant and the principal. The testimony in question is of the nature, and similar in character, to much of the evidence held by this court on the former appeals in this case and in the several appeals of Caleb Powers, to be competent. It is to be borne in mind that the principal witnesses against appellant, and the only ones who claimed to have personal knowledge of his guilt, were his accomplices, whose testimony it was necessary to corroborate as required by section 241, Cr. Code. In the very nature of the case much of the corroborating testimony was necessarily circumstantial, and where, as in a case like this, such testimony must be relied upon, the evidence should be allowed to take as wide a range as would consist with justice and the well-recognized rules obtaining with reference to the admission of such evidence. We are of opinion, therefore, that while some of the evidence complained of—notably that of Jones and Day—is somewhat remote, and even fragmentary; yet, inasmuch as practically the same statements which they claim to have overheard as coming from appellant were testified to by the witness Stubblefield as having been made to him by appellant in a conversation about the same time in regard to the death of William Goebel, in which conversation, as stated by Stubblefield, appellant admitted that he had fired the shot which killed Goebel, we think the lower court did not err in permitting the testimony of Jones and Day to go to the jury.

Appellant also complains of the instructions. But we find that the instructions conform absolutely to the rule laid down by this court on the second appeal, and are, besides, free from error.

A careful examination of the record having failed to dis-

close any error prejudicial to the substantial rights of the appellant, the judgment is affirmed.

Chief Justice Burnam dissents.

Judge O'Rear's dissenting opinion:

I am unable to agree with the four members of the court who hold that the presence of the accused in a felony trial can be dispensed with even by his consent, during the impaneling of the jury, or at any other stage of the trial. Bill of Rightss Const. section 11; Cr. Code, section 183; Meece v. Commonwealth, 78 Ky., 586; Rutherford v. Commonwealth, 78 Ky., 642; Temple v. Commonwealth, 14 Bush, 769, 29 Am. Rep., 442; Allen v. Commonwealth, 86 Ky., 642, 6 S. W., 645; Hopt v. People of Utah, 110 U. S., 574, 4 Sup. Ct., 202, 28 L. Ed., 262.

Nor can I agree that the evidence by Jones and Day of fragmentary conversations alleged to have occurred in Laurel county, between appellant and some other person, when it is conceded that the portions detailed are incomplete and disconnected from what went before or followed, is relevant as admissions by the accused. Berry v. Commonwealth, 10 Bush, 16; Terrell v. Commonwealth, 13 Bush, 246.

I concur with the majority of the court that the rejection of the communication between Youtsey and his wife was proper.

Response to petition of appellant for rehearing by Judge Hobson:

The questions called to our attention in the petition for rehearing under the Constitution of the United States were considered by the court on the original hearing (80 S. W.,

211), 25 R., 2213, and we adhere to the conclusion there reached that no right of appellant under the fifth, sixth, or fourteenth amendment to the Constitution of the United States has been violated.

The motion for rehearing is overruled.