## Bell v. Commonwealth.

(Decided January 18, 1924.)

### Appeal from Bourbon Circuit Court.

1. Embezzlement—Money Held Sufficiently Described.—An indictment charging the embezzlement of "$198.90," sufficiently described the money under Criminal Code of Practice, sections 122, 124, 135, though there was no averment that it was lawful money of the realm or of the United States or some such expression.

2. Embezzlement—Evil Intent Necessary Element, and Must be Charged.—Evil intent is a necessary element of the crime of embezzlement defined in Ky. Stats., section 1202, and, as at common law, must be charged in the indictment.

3. Embezzlement—Evil Intent Held Sufficiently Alleged.—An indictment for embezzlement under Ky. Stats., section 1202, sufficiently

charged evil intent, where it stated that defendant "fraudulently converted to his own use," etc.

4. Embezzlement—Ownership of Funds Converted by Cashing of Check.—Where president of company drew check, and deliberately cashed it, and converted the proceeds to his own use, the funds at the time of the conversion were the funds of his own company, and not the funds of the payee, and he was guilty of embezzlement.

5. Criminal Law—Instruction Held to Sufficiently Define "Fraudulently Converted."—In prosecution for embezzlement, if the term fraudulently converted" should have been defined, it was in effect defined by an instruction that they could not convict, "unless defendant converted the money with an intent to deprive the true owners of same," and substantial rights of defendant could not have been prejudiced by failure to give a formal definition.

6. Criminal Law—Newly Discovered Evidence of Controlling Character Requires New Trial.—Newly discovered evidence of controlling character, which would probably have changed the verdict, though cumulative, requires the granting of a new trial.

7. Criminal Law—When Cumulative Evidence Requires New Trial and Sufficiency of Affidavit.—If the testimony of a single additional witness, who had testified, as had two other witnesses, on the trial, is of itself sufficient to warrant the reviewing court in overruling trial court in the matter of granting a new trial, it could only be where made clearly to appear, not only that the accused had not failed to exercise reasonable diligence to discover the witness before the trial, but that the witness is entirely disinterested and of such character that, if his evidence had been heard at the trial the verdict returned would have been flagrantly against the evidence, and the affidavit in support of the motion for new trial must make this clear.

8. Criminal Law—Remarks of Prosecuting Attorney Held Not to Require Reversal.—In prosecution for embezzlement, assertion of Commonwealth attorney that testimony of defendant and his witness was unworthy of belief, because out of their own mouths, defendant was guilty of forging the name of a third party to a check, and the witness was guilty of embezzlement by appropriating to his own use funds of his employer, if erroneous and improper, held not to require reversal.

L. G. CAMPBELL, B. J. BETHURUM and R. L. POPE for appellant.

THOS. McGREGOR, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant complains of a judgment convicting him of embezzlement and fixing his punishment at three years' confinement in the state penitentiary.

1.   His first contention is that the court erred in overruling his demurrer to the indictment, which is said to be fatally defective in that it fails (a) adequately to describe the property converted, or (b) that it was converted with the intent to defraud the owner of same.

(a).   The property is described simply as "one hundred ninety-eight dollars and ninety cents," and it is insisted that without an averment it was lawful money of the realm or of the United States or some such expression, the description is not sufficiently definite and certain to comply with the provisions of sections 122 and 124 of the Criminal Code relating to all indictments. This however is not true, since by section 135 of the Criminal Code it is expressly provided that:

> "In an indictment for the larceny or embezzlement of money, or United States currency, or bank notes, it is sufficient to allege the larceny or embezzlement of the same without specifying the coin, number, denomination or kind thereof."

In construing this section in connection with sections 122 and 124, we have denied the same contention that appellant is now making in a number of cases.   Hayes v. Commonwealth, 173 Ky. 188, 190 S. W. 700; Cosby v. Commonwealth, 186 Ky. 503, 217 S. W. 357; Stephens v. Commonwealth, 188 Ky. 824, 224 S. W. 364.

(b)   We uniformly have held that an evil intent is a necessary element of the crime of embezzlement defined in section 1202 of Kentucky Statutes, and as at common law must be charged in the indictment.   Commonwealth v. Barney, 115 Ky. 475; 74 S. W. 181; Farmer v. Com., 91 S. W. 1129, 28 R. 1369; Morse v. Com., 129 Ky. 294, 111 S. W. 714; Commonwealth v. Smith & McGuiar, 127 Ky. 171, 20 C. J. 433; Bishop's New Criminal Law, section 345.

But the indictment here accused appellant:

> "of the crime of embezzlement committed as follows, viz.: The said C. L. Bell in the said county of Bourbon, on the 21st day of June A. D., 1923, and before the finding of this indictment, did, he being then and there the duly elected and acting president of the Bourbon Oil and Development Co., a corporation, embezzle and fraudulently convert to his own use one hundred and ninety-eight dollars and ninety cents, the property of the said corporation, which said money had been placed in the care of the defend-

ant and under his management as the president of said corporation, against the peace and dignity of the Commonwealth of Kentucky."

How it can be argued that the averment appellant "fraudulently converted to his own use" is not an allegation the conversion was made with an intent to defraud, is not apparent. The indictment not only charges the offense in almost the precise language of the statute, but, giving any meaning whatever to the word "fraudulently," clearly charges an intent to defraud, hence the court did not err in overruling the demurrer thereto.

2. The next insistence is, that the appellant's motion for a peremptory instruction was improperly overruled.

It was proven by the Commonwealth, and admitted by the defendant, that he cashed and used the proceeds of a check for $198.90 which, as president of his company, he had issued but not delivered to the Muncie Oil Engine Company. It is the contention of the appellant that the funds represented by the check became the property of the payee when the check was executed, and when converted to his own use by appellant were the funds of the Muncie Company and not of the Bourbon Oil and Development Company, as charged in the indictment.

In support of this contention, we are referred to several cases from this court in which it was held that a check is an absolute appropriation of so much of the funds in the hands of the bank to the credit of the drawer as is called for by the instrument, and that after notice to the bank, the money becomes the absolute property of the person to whom the check was drawn, and the drawer loses all interest in the fund to the extent of the check. Commonwealth v. Ky. Distilleries & Warehouse Co., 132 Ky. 521, 116 S. W. 766, and cases there cited. But this is only true where, as in each of those cases, there has been a delivery of the check to the drawee, since a check until delivered is not "drawn" within the meaning of that term as employed in those cases.

As the check here had never been delivered to the payee but was cashed and the proceeds converted by appellant while in his possession as the president of the drawer for the purpose of delivery, we are of the opinion the funds converted were the funds of the latter and not the former.

This contention is therefore without merit.

3. The court, in the instructions given, did not formally define the term "fraudulently convert," and as a consequence it is argued that, since a conviction was authorized upon belief by the jury of a fraudulent conversion by appellant, the question was left to the jury as to what constituted a fraudulent conversion. This, however, is not true, since the court, by the second instruction, informed the jury that they could not convict the defendant in any event "unless defendant converted the money with an intent to deprive the true owners of same."

Assuming a necessity therefor, this in effect was a definition of the term "fraudulently convert" employed in the first instruction as the basis for a conviction; and, as this instruction was offered by the defendant and is substantially a correct definition, it is clear the appellant's substantial rights could not have been prejudiced by the failure of the court to give a formal definition of the term in another instruction.

4. It is also argued that the court erred in denying a new trial upon the ground of newly discovered evidence.

Defendant's defense to the charge was that, although without authority so to do, he had endorsed the name of the payee on the check and converted the proceeds thereof to his own use, he had done this only to reimburse himself for funds he had advanced to one Al Goodpaster, the field agent of the Bourbon Oil & Development Co., to pay the indebtedness to the Muncie Oil Engine Company for which the check was drawn, and that Goodpaster, in violation of his instructions, had diverted the funds to his own use. In this testimony defendant was corroborated by Goodpaster, and the jury were instructed by the court, if they so believed, they should acquit the defendant.

After the trial, defendant filed the affidavit of one Harney that he was present in Winchester, Kentucky, when the defendant paid the money to Goodpaster and instructed him to turn it over to the agent of the Muncie Company in settlement of the bill for which the check was drawn.

It is insisted for appellant, that this evidence, while cumulative as it clearly is, was of such controlling character as would probably have changed the verdict.

We have decided in several cases that where this is true, it is prejudicial error to refuse a new trial. Tyree v. Commonwealth, 160 Ky. 706, 170 S. W. 33; Johnson v. Commonwealth, 188 Ky. 391, 222 S. W. 106.

It is not clear, however, from the affidavits of defendant and Harney, that the former did not know of the presence of the latter at the time, or even that he did not know at the time of the trial that Harney would testify as he proposed to do on another trial, since it is only stated in the affidavits that Harney had not previously informed defendant of his presence at that time. Hence it is at most but inferentially stated that defendant did not know until after the trial of Harney's presence at the time, and certainly, if he knew this fact, reasonable diligence required of him that he should have ascertained what, if anything, Harney knew about the matter before the trial.

Then again, the weight that might be attributed to Harney's testimony depends upon much beside whether or not he was related to the defendant or Goodpaster, and with only this information about him in the record, we do not feel warranted in holding that the trial court, who probably saw or may have known him, abused a sound discretion in refusing to grant a new trial upon the sole ground that the addition of Harney's evidence to that of the defendant and Goodpaster might have changed the jury's verdict. It would be an extremely dangerous precedent to hold that the testimony of a single additional witness, who would testify as had two witnesses on the trial, was of itself sufficient ground for this court to overrule the trial court in the matter of granting a new trial. And if such a course ever could be justified, a question not now decided, it could only be where it was made clearly to appear not only that the defendant had not failed to exercise reasonable diligence to discover the witness before the trial, but that the witness was entirely disinterested and of such character that if his evidence had been heard at the trial the verdict returned would have been flagrantly against the evidence.

As neither of these conditions was shown clearly if at all in this case, it is clear a reversal should not be ordered on this ground.

5. The remaining contention is, that the Commonwealth attorney, in the closing argument to the jury, asserted that the testimony of the defendant and his wit-

ness Goodpaster was unworthy of belief because of the fact that out of their own mouths the defendant was guilty of forging the name of the Muncie Oil Engine Company to the check, and Goodpaster was guilty of embezzlement by appropriating to his own use funds of his employer entrusted to his care for specific purposes.

There was no misstatement of the evidence, and we are not prepared to say that the attorney's deductions therefrom were unwarranted at law, or that if his deductions therefrom had been erroneous a reversal should be ordered because thereof.

Judgment affirmed.