## Alder v. Commonwealth.

Feb. 24, 1939.

IRA D. SMITH, Judge.

S. Y. TRIMBLE, IV, and S. Y. TRIMBLE for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, Jake Alder, Pete Bilyeu and Earl Poindexter were jointly indicted by the Grand Jury of Christian county charging them with the offense of grand larceny, viz., that they stole the sum of $60 in money from the prosecuting witness, Phelps Thomas. Appellant was tried separately at the June 1938 term of court, convicted and sentenced .to the penitentiary for a period of one year, and from that judgment he has prosecuted this appeal, insisting upon a reversal of the judgment upon various grounds.

(1) It is insisted that the court erred in not sustaining appellant's motion for a peremptory instruction at the close of all the evidence; the court further erred in refusing to set aside the verdict of the jury as being flagrantly and palpably against the law and the evidence.

In the late afternoon on a day in October, 1937, ap-

pellant and his companions Bilyeu and Poindexter and the prosecuting witness, Phelps Thomas, happened to meet on the streets of Hopkinsville. Thomas had a check for the sum of a little in excess of $60 which he desired to cash and went to the whiskey store of one Coly in Hopkinsville to get the check cashed, and received therefor seven $5 bills, two $10 bills, and five $1 bills, and rolled them up together and put them in his shirt pocket. The evidence is not clear as to whether appellant and his companions went into the store with Thomas or came in about the time the check was cashed. The appellant asked Thomas to buy him a half pint of whiskey and Thomas told him it was too high there and appellant said he knew where he could get a half pint for a quarter, and they all proceeded to go to a certain place in Hopkinsville and procured whiskey. They got in an automobile which was owned and driven by Bilyeu and went out on the LaFayette road to a roadhouse known as Parker West's Place. Bilyeu, the driver of the car, Thomas and appellant rode on the front seat, Thomas being between the other two, and Poindexter was on the back seat. Thomas, Bilyeu and Poindexter got out of the car and went into West's place and stayed a short while, leaving appellant in the car.

Thomas testified that after they had crossed the railroad on their way to West's place he ran his hand in his pocket and found that his money was gone, but said nothing about it at that time, but he told Urey Reed at West's place that "they got his money." He was asked if the boys had done anything to arouse his suspicion and he said they had not. He said he did not see any of them take his money but that he felt Alder's hand about him just after they crossed the railroad. Later he said he felt someone's hand about him and he guessed it was Alder's.

It is insisted that Thomas' evidence is so contradictory and uncertain as to render it of no probative value. It may be conceded that his evidence is somewhat incoherent and indefinite in regard to the hand he claims he felt about him, but that was a question for the jury. He said they stayed at West's place a short time and Thomas asked them to take him home, to which they acceded, and they went back through Hopkinsville and out in the country a few miles to Thomas' father's home and when they arrived there Bilyeu turned the car around heading it back toward Hopkinsville.

Thomas asked appellant to go to the house with him and appellant got out of the car with Thomas and after they were a short distance from the car Thomas told appellant that he got his money and asked him to give it to him, and appellant said he did not have it, and Thomas told him he was lying and called him vile names, and knocked him down, and when he got up he knocked him down again and then appellant said Pete (meaning Pete Bilyeu) had the money and he then started running down the road and Thomas pursued him a short distance and then abandoned the race and went back to the house and reported to his father, Marion Thomas, and his brother, John Thomas, that he had been robbed. He said that when he and appellant entered into the fight or controversy about the money they were near enough to the car for Bilyeu and Poindexter to hear what was said and the latter two immediately left the scene, leaving their companion, appellant, and proceeded back toward Hopkinsville. Marion Thomas called Buell Giles, a Hopkinsville policeman, and reported the robbery to him, giving the names of the boys and perhaps a description of the car, etc., and the policeman apprehended Bilyeu and Poindexter and searched their car and found in it three $5 bills wadded up separately lying on the floor board of the car behind the front seat. In the meantime, the prosecuting witness, Marion Thomas and John Thomas got into Marion Thomas' car and started out in pursuit of appellant and apprehended him about three-quarters of a mile distant and took him in charge and conducted him to the police station and turned him over to the policeman, Giles, and perhaps others, and they asked appellant if he had any money, and he said that he had none. They searched him and found three $5 bills in his shoes or socks and one $5 bill in his vest pocket.

R. C. Coly, who cashed the check for Phelps Thomas, testified that appellant, Bilyeu and Poindexter came into his place of business right after the check was cashed and that they and Thomas left his place together.

Marion Thomas testified that his son came home about 7:30 o'clock on the night in question; that he heard a car drive up to the gate and heard his son curse "this boy" and heard some licks passed and he got up and went out and Alder (appellant) had run off up the road; that he went to the house and called Giles, the

policeman, and informed him that his son had been robbed and "notified him about these boys," and then got in his car and overtook appellant and stepped out of the car and told him to get in and took him to Giles, where the search was made with the result stated above. This witness testified positively that they took a $5 bill out of appellant's watch pocket and three $5 bills out of his shoes and two or three other witnesses including Giles, the officer, gave like positive testimony. However, one witness, Goebel Poindexter, testified that he "believed" that a $1 bill was taken out of appellant's watch pocket. John Thomas gave testimony in substance about the same as that of Marion Thomas as to what happened when Phelps Thomas and his companions arrived at the Thomas home, and the apprehension and search of appellant.

Appellant, testifying in his own behalf, stated that he met Thomas, Bilyeu and Poindexter about 4 o'clock P. M. on a street corner in Hopkinsville and that he and Thomas were both intoxicated. He said Thomas asked him to take him home and said he would buy him a pint of whiskey and later he met him at Coly's place (where the check was cashed) and Pete Bilyeu said he would take Thomas home; that he, Thomas and a Mr. Insley went out and bought the whiskey and they left him at that place at about 4:30 o'clock and he did not see them any more until 7:30 and Thomas and the other companions came by for him and he was drunk but got in the car with them; that Thomas said nothing to him about his money but only said he wanted to go home and when they arrived at his home Thomas asked him if anybody got his money, and hit him and he said to Thomas "Ask Pete and the other boys about the money," and ran down the road and hollered for them to wait. Later he was picked up by Thomas, his father and brother and carried to the police station where he was searched. When asked about the money found on him, he said, "I was so drunk I was trying to save my money—it was a wonder I didn't hide it under a rock. I put it in my sock to take care of it." He was asked if he told Giles that he did not have any money and he said he "guessed" he did and said that was the truth that he had no money of Thomas' and that it was his money. He was asked where he got the money and he said "I worked for it—I gamble and shoot dice, I am not a pauper." He said that previous to the time

Thomas accused him of having his money he had been informed by some one that Thomas was claiming that his money had been taken and that he told the other boys that Thomas said he had lost some money. He denied having seen Thomas cash the check.

On cross-examination appellant was asked when he put his money in his sock and he said he must have done that after the fight or before that time, and that when he was arrested he was so drunk he did not know where his money was. He was again asked where he was when he put the money in his sock and he then said, "There at West's place or out on the road, I was trying to take care of my money." He was further cross-examined about where he got the money but he could not tell how much of it he worked for or how much he won "shooting craps," nor could he tell how long he had had the money, but only said, "I had a roll on me that night." He admitted that he told Giles that the money or some of it belonged to a Mrs. Dukes, and also admitted that he testified at the examining trial that all the money belonged to Mrs. Dukes and that she gave it to him to pay bills with. He finally said that some of the money was Mrs. Dukes' and some of it was his.

Appellant offered no other witness in his behalf except Pete Bilyeu who was jointly indicted with him. When Bilyeu was called and started to the witness stand the court admonished him to consult his lawyer before testifying and after consulting his lawyer he then informed the court that he did not desire to testify and the court refused to require him to give any testimony. It was then stated by counsel in the form or substance of an avowal that if Bilyeu were permitted to testify he would corroborate appellant in all his testimony. It is insisted that the court erred in refusing to require Bilyeu to take the witness stand and to give testimony under the protection of the court, and require him to give answers to such questions as may have been asked him provided the specific question asked would not tend to incriminate him.

In support of appellant's position he cites and relies upon the case of Frain v. Applegate, Judge, 239 Ky. 605, 40 S. W. (2d) 274. In that case the witness refused to answer certain questions propounded to him before a grand jury on the grounds that he might incriminate himself. It was held that a witness is not permitted to

refuse to answer questions before the grand jury on his mere arbitrary assertion that the answer elicited might incriminate himself. However, it must not be overlooked that in that case the witness was merely called to testify before the grand jury but not as a witness for or against another jointly indicted with the witness.

In Howard v. Com., 118 Ky. 1, 80 S. W. 211, 81 S. W. 704, 25 Ky. Law Rep. 2213, 26 Ky. Law Rep. 363, Howard was indicted for the murder of Governor Goebel and sought to introduce as witness for him Green Golden, who was jointly indicted with Howard. Golden was introduced by Howard and after certain preliminary questions without objections from the Commonwealth, or suggestion from the court, he announced that he had been indicted in the same case but had not been tried, and claimed his privilege, and the court did not require him to testify upon the ground that he could not do so without giving evidence against himself. To the same effect, see Burdette v. Com., 93 Ky. 76, 79, 18 S. W. 1011, 13 Ky. Law Rep. 960.

Appellant attempts to distinguish the Howard case supra, on the ground that the witness Golden took the witness stand and was asked certain questions before the court ruled that he could not be required to give evidence against himself. But as we have already stated, there were no objections made by the witness, or by counsel or anyone, to his testifying before he took the witness stand and before he was asked any questions. Had he made the objections when he was called as a witness, as did Bilyeu in the present case, we see no reason for doubting that the court would have refused to force him to take the stand and wait until questions were first propounded to him before claiming his exemption. We do not think the court erred in refusing to require Bilyeu to take the witness stand and wait until questions were propounded to him which the court might consider self-incriminating on his trial. The court could not anticipate what questions or answers thereto might or might not be self-incriminating and might have required him to have answered questions which would have proved prejudicial to him upon his trial.

It appears to us that the evidence is sufficient not only to take the case to the jury but also to support the verdict.

(2) It is next insisted that there was no proof that Thomas, the prosecuting witness, did not consent to the taking of the money and if appellant took the money he was guilty of robbery and not of grand larceny. This argument is based upon the fact that Thomas said he felt appellant's hand or some one's hand about him and, after he had missed his money he was afraid to say anything about it while in the car with appellant, Bilyeu and Poindexter; that he was seated in the front seat between appellant and Bilyeu and Poindexter was seated at his back in the rear seat and he was afraid they would knock him in the head if he revealed to them that he had lost his money or accused them of taking it. Thomas did not testify that he knew that they were taking his money at the time he felt the hand about him or that they put him in fear at that time. He merely said that he felt Alder's hand or some one's hand about him, but he does not say that he knew they were taking his money at that time, or at any particular time or place, but later when he missed his money he was then afraid to mention it to them while they were situated as stated above. We do not think that there was any evidence tending to show that the money was taken in a manner or under circumstances amounting to robbery.

(3) Appellant also insists that the money found in his possession was not identified as being the identical bills taken from or lost by Thomas. It is shown by the evidence and not disputed that when Thomas cashed his check he received therefor seven $5 bills, two $10 bills, and five $1 bills, and that four $5 bills were found on the person of appellant, and three $5 bills found in the automobile, aggregating seven $5 bills, the same number of such bills received by Thomas when he cashed the check. In cases of theft of money if the Commonwealth should be required to prove that money found on an accused is the identical bills claimed to have been stolen, only on rare occasions could a conviction be had. In some instances bills may be marked or bear other peculiar evidence of identity, but such is a rare exception. In the present case appellant was found in the possession of bills of the same denomination as those lost by Thomas and this circumstance furnished competent evidence for the jury's consideration, notwithstanding the bills were not specifically identified except they were of the same denominations.

(4) The next argument is that the court erred in

144

failing to instruct the jury on the offense of petit larceny. This contention is based upon the fact that one witness who saw appellant searched said that he believed that the bill taken from appellant's pocket was a $1 bill, but as we have pointed out in our discussion of the evidence, a number of other witnesses including the officer who made the search, and whose business it was to definitely ascertain and notice the denominations of the bills, was positive in their testimony that the bill taken from appellant's pocket was a $5 bill. It is fundamental rule of evidence that what a witness merely believes does not furnish evidence of a convincing nature and this is particularly true when a mere belief is contradicted by the positive evidence of witnesses who know. In the circumstances it is our view that what the witness merely believed is entitled to no weight as evidence, in the face of the positive and unequivocal evidence of a number of other witnesses who testified contrary to such belief. However, be that as it may, the exact sum of money found on appellant's person is not material, since the indictment charged appellant and his companions with stealing the sum of $60 from the prosecuting witness. The money found in appellant's possession was a circumstance tending to prove that appellant alone, or in connection with his co-defendants, took from the prosecuting witness the sum of $60. It is shown by the evidence and not contradicted that the $60 in bills were rolled up together and in Thomas' shirt pocket and it would have been unreasonable, if indeed not impossible, for one person to have taken a part of the bills only from the roll without getting all of them. If appellant took from Thomas the money found in his, appellant's, possession, evidently he took the remainder of the money from Thomas, or, as charged in the indictment, aided and abetted one or both of his companions in such taking.

(5) It is further contended that the four $5 bills found in the defendant's possession were not of the value of $20 insofar as the offense of grand larceny is concerned, since the value of a dollar has been reduced 40% by the Act of Congress and that a dollar now is worth in gold only about 60% of what it was when the statute under which this defendant was convicted was enacted. Our conclusion in the preceding topic (4) makes it unnecessary to further consider this question, since the exact sum of money found in possession of

appellant is not material for the purpose of sustaining the charge of grand larceny.

(6) It is also insisted that the appellant was not legally arrested at the time the search was made (there being no search warrant issued) and therefore the money taken from his person was not competent evidence against him.

We cannot subscribe to the contention that appellant was not legally under arrest when the search was made. It is shown by the undisputed evidence of Phelps Thomas, Marion Thomas and John Thomas, and admitted by appellant, that when the Thomases apprehended him they stopped their automobile, opened the door and commanded him to get in the car, which he did, and they then conducted him to the police station and turned him over to the policeman. The rule that a private citizen has the right to make an arrest when he has reasonable grounds to believe that a felony has been committed is too well known to require citation of authority. Nor can it be said that the prosecuting witness, Phelps Thomas, did not have reasonable grounds to believe that appellant had taken his money either himself or acting in conjunction with Bilyeu and Poindexter. Also the information received by the policeman from Marion Thomas that Phelps Thomas had been robbed and further notifying him of the parties guilty of the robbery, and that they, the Thomases, later arrived at the police station with appellant in custody, was sufficient information to warrant the policeman to believe that appellant had committed a felony, and then and there make the arrest even though he were not already under arrest by the Thomases. We conclude, therefore, that appellant was legally under arrest at the time the search was made and the money found on his person was competent evidence against him.

(7) The next point raised is that the court erred in not giving the jury an instruction on drunkenness. The argument is that appellant was entitled to the benefit of an instruction in substance that if the jury believe that he was so drunk that he did not have the felonious intention as set forth in the indictment he should be found not guilty. All the evidence tends to show that he was not too drunk to know what he was doing, or to entertain felonious intent. Throughout the course of the testimony of appellant, in answer to certain ques-

tions he would say that he was drunk, or that he was so drunk that he did not know about certain matters, but his testimony as a whole clearly discloses that he remembered and understood in detail all that occurred on that night. He told a well-connected story about all the maneuvers and transactions that occurred on the trip when the prosecuting witness claimed his money was stolen. It appears that his memory was clear and he knew everything that transpired when he could answer a question favorably to himself, but when confronted with difficulty in giving a plausible answer to a question he then claimed to be too drunk to know. We do not think the evidence warranted an instruction on drunkenness and the court did not err in failing to give the same.

(8) The next point raised is that the demurrer to the indictment should have been sustained because it does not properly describe the property alleged to have been stolen. The indictment alleges that appellant and others indicted with him did "take, steal and carry away about $60.00 in money, the personal property of Phelps Thomas * * *."

In Cosby v. Com., 186 Ky. 503, 217 S. W. 357, 358, the indictment charged that Cosby did "take about $18 in money, the property of William Coldiron". In discussing the sufficiency of the indictment the court said:

"As the Code declares it shall not be necessary in an indictment for the larceny of money to specify 'the coin, number, denomination or kind,' it follows that the only requirement is to state the amount thereof. This the indictment does with sufficient accuracy 'to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment, * * *'". See, also, Bell v. Com., 202 Ky. 163, 259 S. W. 29, and Hooper v. Com., 204 Ky. 32, 263 S. W. 659.

(9) It is insisted that Instruction No. 1 given by the court is erroneous, since under it the jury was authorized to find appellant guilty either as a principal or as an aider and abettor.

The indictment charged that appellant, Bilyeu and Poindexter committed the theft charged in the indictment, thus charging all of them as principals, and

further stated that appellant committed the theft and that Bilyeu and Poindexter aided, assisted and abetted appellant in the commission of the offense. The argument is that appellant could not be convicted as an aider and abettor, since the guilt of Poindexter and Bilyeu was not proven on the trial.

Section 1128, Kentucky Statutes, provides that in all felonies, accessories before the fact shall be liable to the same punishment as principals and may be prosecuted jointly with principals, or severally though the principals be not taken or tried.

In Hogan v. Com., 230 Ky. 680, 20 S. W. (2d) 710, cited in the notes under the section of the statute, supra, it is held where two or more are jointly indicted for a felony any of the accused may be convicted as a principal or as an aider and abettor.

It may be conceded that the indictment is somewhat inaptly framed but it is sufficient to inform appellant that he was charged with the theft of the money in question jointly with Bilyeu and Poindexter, or, that he, appellant, took the money and was aided and abetted by Bilyeu and Poindexter in so doing, hence he was not misled in the preparation and presentation of his defense to the charge either as a principal or as an aider and abettor.

The instruction may not be technically accurate as it might have been framed, yet we think it fairly presented the issues made by the evidence and the slight error therein, if any, was non-prejudicial.

Finding no error prejudicial to the substantial rights of appellant, the judgment is affirmed.