# HENRY T. HELM

*v.*

# ELIZA CANTRELL *et al.*

1. LIMITATIONS—*new promise.* One partner executed a note in the name of the firm, after dissolution, and without the knowledge of the other partner, for a prior account due from the firm, and the note thus given was assigned by the payee to a third person, who was a mere volunteer, and without any assignment of the original indebtedness. In a suit by such assignee, against the representatives of the partner who did not concur in the making of the note, to compel its payment, it was *held,* that if the original debt became barred by the statute of limitations, as it would in five years, no new promise would revive and make it available in the hands of the plaintiff.

2. SAME—*effect of the note as against the partner who was not bound by it.* In such case, the original indebtedness being barred, the giving of a note therefor, in the name of the firm, by one of the partners alone, would not operate as a renewal or continuation of the debt as against the other partner, who was not bound by the note.

3. ALLEGATIONS AND PROOFS—*of the theory upon which a bill is framed.* Every fact essential to the plaintiff's title to maintain a bill and obtain the

relief sought, must be stated in the bill, otherwise the defect will be fatal; for no facts are properly in issue unless charged in the bill, and of course no proof can be generally offered of facts not in the bill, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, for the court pronounces its decree *secundum allegata et probata.*

4. So, where one of two partners executed a promissory note in the name of the firm, after the partnership was dissolved, for a pre-existing debt of the firm, but which had become barred by limitation, the other partner having no knowledge of the giving of the note at the time, upon bill filed by a subsequent holder, against the widow and heirs of the partner who did not participate in the making of the note, to subject real estate held by them to its payment, it was alleged that the note was made by the two members of the firm as partners, under the name and style of their firm. It was *held*, that under such an allegation it was not competent to prove that, although the deceased partner was not a partner at the time the note was given, yet he had subsequently ratified the act as shown by his admissions. To have rendered such admissions competent evidence, the bill should have disclosed the fact that they would be relied upon.

5. SAME—*as to the binding effect of a judgment.* And where the note in such case had been allowed by the county court, in a proceeding to which the administrator of the deceased partner was alone a party defendant, and the judgment thus obtained was treated in the bill as only *prima facie* evidence, it was held the complainant could not, upon the hearing, insist that it was conclusive upon the widow because she derived title to the land in controversy from the intestate, but must abide by the case made in his bill.

6. EVIDENCE—*conversations.* Witnesses should state facts, and not mere inferences or conclusions; and where a witness is testifying in respect to the alleged admissions of another, if he is unable to give the words, language, or the substance of it, he should not testify at all; the witness can not be permitted to give a mere conclusion of his own, when the conversation or declarations from which the conclusion is drawn, have passed from his mind.

7. HEIRS—*conclusiveness of judgment against an administrator.* Where a claim is allowed against an estate in a proceeding in which the administrator is alone a party defendant, while the judgment is conclusive as between the creditor and the administrator, it is not as to the heirs.

APPEAL from the Circuit Court of Logan county.

Messrs. HELM & HAWES, for the appellant.

Mr. WILLIAM B. JONES, for the appellees.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was a bill in chancery, in the nature of a creditor's bill, filed in the Logan county circuit court, on the 24th day of February, 1868, by Helm, the appellant, against the appellees, being the widow and children of James M. Cantrell, deceased.

The material allegations of the bill are, that, on the 26th day of September, 1856, George W. Rowell and said James M. Cantrell, being co-partners, under the firm name of George W. Rowell & Co., and as such, indebted to Wadsworth & Wells, merchants, in Chicago, in the sum of $586.34, made their promissory note, under said firm name, for that amount, payable one day after date, with interest, to Wadsworth & Wells, which the latter, on the 16th day of October, 1861, assigned to Helm, which note had not been paid; that on the 27th day of April, 1866, said Cantrell died, leaving Eliza Cantrell and several children him surviving; that his estate is insolvent. At the April term, 1867, of the court of Logan county, Helm having filed said note as a claim against the estate, had it allowed for the sum of $957.78 against Abner J. Lutes, administrator of Cantrell's estate, to be paid in due course of administration. The bill alleges that said note was the sole foundation of said judgment, which remained unpaid; that Cantrell was indebted to divers persons at and prior to his death, and was wholly insolvent. It is then alleged that, sometime after the making of the note, said Cantrell made a contract with the Illinois Central Railroad Company for the purchase of 160 acres of land situate in Logan county; went into possession and made many valuable improvements, and, before his death, had paid for one-half of the said 160 acres, and caused a deed to be made for such half, by the railroad company, to his wife; that he paid the whole purchase money for that half, and his wife no part of it; that, at the time of his death, he had paid a large part of the purchase money for

the remaining half, but, a short time before his death, assigned the contract therefor to his wife; alleges that the land is worth sufficient to pay said judgment, and that the title of the wife is, as to appellant, fraudulent and void.

The bill calls for an answer upon oath, prays for a discovery, and that the land may be subject to said judgment.

The defendants answered, under oath, denying the execution of the note by James M. Cantrell, denying the existence of such indebtedness, or of any co-partnership at the time of the making of the note, setting up a dissolution of it six months before the note was made; denying that Cantrell had paid for the land as alleged, setting forth that said James M. had paid only a small portion of the purchase money; that a daughter, Eliza M. Cantrell, who had $600 in her own right, had paid that sum on the half of the 160 acres which was conveyed to her mother, upon the express agreement that the same should be so conveyed, and that this should be deemed and regarded as an investment therein by her to that amount.

The answers denied all fraud in relation to the land ; set up the statute of limitations against the indebtedness; laches, and averred that the widow had paid the principal part of the purchase money, with what was so paid by the daughter.

Replication was filed, and the cause heard upon the pleadings and proofs, and a decree was entered dismissing the bill; from which decree an appeal was taken to this court.

This case does not commend itself to the favorable consideration of a court of equity.

It appears, beyond controversy, that the firm of Rowell & Co., which existed during the years 1854, 1855, and a part of 1856, was, in fact, dissolved about the first of March, 1856, six months before the making of the note, and that the only transaction the firm ever had with Wadsworth & Wells was a purchase of goods made on the 26th of September, 1855, upon credit. It does not appear how long the credit was to be, or that any agreement was made for interest, or that any circumstances existed which would entitle Wadsworth & Wells to

interest.   The amount of that indebtedness, as shown by com-
plainant below, was only $558.42, yet, on the 26th of Septem-
ber, 1856, and six months after the dissolution of the firm of
Rowell & Co., they obtain a note, made by Rowell, in the
absence and without the knowledge or consent of Cantrell,
but in the former firm name of Geo. W. Rowell & Co., for
$586.34, payable to the order of Wadsworth & Wells one day
after date, with interest.

No efforts were made to reduce the original indebtedness to
judgment, and on the 16th of October, 1861, the payees of
the note assigned it to appellant, who, so far as the record
shows, was a mere volunteer, and without any assignment of
the original indebtedness.   So that, if that debt became barred
by the statute of limitations, as it would in five years, no new
promise would revive and make it available in the hands of
appellant.   His title to maintain the bill depended, therefore,
solely upon James M. Cantrell's liability upon that note.   His
allegations in that respect are, that Rowell & Cantrell, being
co-partners, and, as such, indebted to Wadsworth & Wells in
the amount of the note, made the same as partners, under the
name and style of Geo. W. Rowell & Co.   Upon this alle-
gation issue was taken.   The proof under it is all one way,
that the indebtedness was not that included in the note, by
nearly $28, and the note was given by Rowell alone more than
six months after the firm was dissolved.   Then, without giv-
ing these defendants—the widow and children of the deceased
person—any information by any averment, in either the stat-
ing or charging part of the bill, that the case was not as
alleged, but that James M. Cantrell, though not a partner at
the time, nevertheless made himself liable by ratification of
the unauthorized act of making the note by Rowell, introduced
proof of admissions by him to the agents of the payees, made
six or seven years after the fact, and asked a decree accord-
ingly.   It is manifest that the facts necessary to establish a
liability in the two modes are essentially different.   Under the

allegations of the bill, the proof of the existence of the partnership, the making of the note by a partner, for a partnership purpose, would suffice. If this was attempted to be done by admissions subsequent, the force of the admissions could be rebutted by proof of the actual facts. But under the substituted mode adopted, without any allegations or charges to inform the defendants of the issue they were to meet, to constitute ratification it would be necessary to show full knowledge by the principal, and a promise to pay.

In such a case, the principal being dead, a corrupt witness could, falsely, make the admission of the deceased cover the requirement of knowledge, and swear to a promise to pay, when there would be no possibility of rebuttal, and the widow and children be thereby robbed of home and support, without any previous notice by the bill that such a case would be attempted to be made against them. To prevent parties from being taken by surprise and entrapped, by witnesses swearing to confessions, conversations or admissions, it seems to be now established in England, that, if the bill means to rely upon any confessions, conversations or admissions of a defendant, either written or oral, as proof of any facts charged in the bill, the bill must expressly charge what they are, and to whom made; otherwise, no evidence thereof will be admitted at the hearing. Story Eq. Pl. 8th ed. sec. 265, and cases referred to in note 5. This rule has not been adopted in the courts of chancery of this country, although the reason of it affords strong ground for holding plaintiffs in equity, in such a case as this, to a full compliance with the general rules which do prevail, viz: that every fact essential to the plaintiff's title to maintain the bill and obtain the relief, must be stated in the bill, otherwise the defect will be fatal; for no facts are properly in issue unless charged in the bill, and of course no proof can be generally offered of facts not in the bill, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, for the court pronounces its decree *secundum allegata et probata.*

The reason of this is, that the defendant may be apprised by the bill what the suggestions and allegations are against which he is to prepare his defense. Story Eq. Pl. sec. 257; 1 Dan. Ch. Pr. 377; *Fitzpatrick* v. *Beatty*, 1 Gilm. 455; *Primmer* v. *Patten*, 32 Ill. 528; *Brainard* v. *Arnold*, 27 Conn. 617; *Bailey* v. *Ryder*, 10 N. Y. 363; *Crockett* v. *Lee*, 7 Wheat. 522; *Jackson* v. *Ashton*, 11 Peters; *James* v. *McKernon*, 6 Johns. 564.

The reason of the rules referred to required the complainant in this case to have either set out the manner in which the alleged liability of James M. Cantrell accrued upon a note not signed by him in person, or purporting to be signed by him as agent, either in the stating part of the bill or in the charging part, by way of anticipation of the defense arising upon the facts of its origin, and should have distinctly averred a ratification of the unauthorized act, with full knowledge of material circumstances by Cantrell. Then the issue, which was sought to be made by evidence alone, would have been properly made by the pleadings. This was necessary to apprise the defendants, by the bill, of the precise case they would be called upon to meet. There is no hardship in this, because the matters of the alleged ratification were peculiarly within the knowledge of Wadsworth & Wells and appellant, and were unknown to defendants. Any attempt to divest a family of their property by the admissions of the deceased husband and father, sworn to long after the event of making them, is of a most dangerous character, and should be carefully watched. This case affords a strong example. Two witnesses are sworn, who pretend that they, respectively, had conversation with the deceased, but not when both were present. One of them says that he saw Cantrell about the debt of $558.42, which was the original debt, sometime after the note was made; went to try to collect the debt; that Cantrell claimed poverty, that his lands were not paid for; that if he ever got able he would pay the debt. The witness does not pretend that he had the note with him, and it is apparent that the conversation related to the original indebtedness, which is not in question in this suit.

The only other witness upon the question of ratification was Edward C. Austin, a traveling agent for Wadsworth & Wells, in 1857, and to 1861. He says he never saw Cantrell but once; can not state *when* it was, except that it was while he was in the employ of Wadsworth & Wells. He had in his hands a note for his employees, against Geo. W. Rowell & Co., of Atlanta; could not state the amount, but it was over $500. He went with this note to Atlanta; there learned that Rowell had left the country, and that James M. Cantrell had been his partner; then went seven or eight miles into the country, and saw Cantrell; found him on his farm. Cantrell claimed that he had bought the farm of the Illinois Central Railroad Company, but had not paid for it, and was poor. Witness says he showed Cantrell the note, and told him witness's business. Cantrell said that if he ever got able to pay the *debt* he would pay it; that he had already had to pay a good deal of money for the concern; that Rowell was a scamp and had cleared out. Witness asked him who the "Co." of the concern was. He said that *he* had been. *He fully admitted his liability on the note.* Witness said he made a memorandum on the note at the time, but did not then remember what it was.

This testimony was taken some eight years after the alleged conversation, by deposition. The note was not present when it was taken. The note, when produced at the hearing, had a memorandum, in pencil, on the back of it, which appellant testified was in the handwriting of this witness, but there is not one word in it about Cantrell admitting his liability upon it. After this long lapse of time, the witness does not pretend to give either the conversation or the substance of it, in the language of Cantrell, but forecloses the whole subject by saying, "he fully admitted his liability on the note." How did he admit it? What language did he employ? What was the conversation in this respect? As to that, we are left wholly in the dark. The statement is a mere conclusion. Witnesses should state facts, and not mere inferences or conclusions. If the witness was unable to give the words, language, or the

substance of it, as used by Cantrell, he could not testify at all ; he can not be permitted to give a mere conclusion of his own, when the conversation or declarations from which the conclusion is drawn, have passed from his mind.

The answers of the defendants, and the evidence introduced on their behalf, overcame the case made by appellant in his bill, but he insists, on this appeal, that he was entitled to a decree upon the evidence of ratification, to which we have referred. There was no allegation in the bill with which such proof corresponded. He alleged that Cantrell made the note as co-partner with Rowell. This is completely disproved by showing that Rowell made it alone six months after the firm was dissolved. Then complainant, without any such case made by his bill, sought to show that, notwithstanding the note was made by Rowell six months after the firm was dissolved, still, Cantrell, years afterwards, ratified this unauthorized act. Such proof was inadmissible under the allegations of the bill. But even if it had been, we are unwilling to take the mere conclusion of the witness for the basis of a decree for the divestiture of title to real estate.

This case was tried solely upon the theory that Cantrell was bound by the note, and that the transfer of the land contract by him to his wife was fraudulent and void as to complainant, the holder of the note. No other indebtedness subsisting against Cantrell at the time of the transfer was proved or relied upon.

The original indebtedness from Rowell & Co. to Wadsworth & Wells was barred by the statute of limitations, and if the note in question was not binding upon Cantrell, it constituted no renewal or continuation of that indebtedness as against him. The case, therefore, hinges upon the question whether, at the time of the transfer of the land contract to Eliza Cantrell, that note constituted a valid subsisting indebtedness or liability against James M. Cantrell. Under the allegations and proofs in the cause, we are bound to hold that it did not.

If the note in fact constituted no liability against Cantrell at the time of the transfer to his wife, and was never afterwards made such by any act on his part, we are of opinion that the allowance of the note by the county court, years afterwards, upon notice only to the administrator, can not have the effect to give it a retroactive validity, so as to affect that transfer. Such a result could be produced only by the operation of the doctrine of estoppel, and not by that. None of the defendants to this suit were parties to that judgment, except Lutes, the administrator. It is conclusive between creditor and administrator, but not as to the heirs. *Stone et al.* v. *Wood,* 16 Ill. 177.

Whether or not the widow was estopped by it, is a question not presented by this record. The bill is framed upon no such theory. By it the complainant invited and entered into the contest in reference to a simple contract indebtedness against James M. Cantrell, at the time of the transfer of the land contract.

Upon the issue thus made, the evidence strongly preponderates against the complainant, and he can not be permitted now to turn around and say, I insist that the judgment of the county court is conclusive upon the widow, because she derived title from the intestate.

If the bill had relied upon the judgment as conclusive, *non constat,* but she would have attacked it for want of jurisdiction, or for fraud. The bill plainly treats that judgment as only *prima facie* evidence, and appellant must stand by the case so made.

We are of opinion that the circuit court decided correctly, and its decree is affirmed.

*Decree affirmed.*