THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD HOHIMER *et al.* Plaintiffs in Error.

*Opinion filed February 16, 1916.*

1. CRIMINAL LAW—*when judgment of conviction will not be reversed.* A judgment of conviction will not be reversed by the Supreme Court as unwarranted by the evidence merely because the testimony is conflicting, but only where the evidence on behalf of the People, considered with all the evidence in the case, is so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of the defendant's guilt.

2. SAME—*when giving instruction defining an accessory is not error.* On the trial of two men for burglary it is not error to give an instruction containing the statutory definition of an accessory, even though the prosecuting witness and his wife testified that they saw only one person in the house and identified one of the defendants as that person, where there is other evidence tending to show that the other defendant was an accomplice, and where the instruction cautioned the jury that the court did not intend to indicate that either defendant was an accessory but that such question was one of fact for the jury to determine from the evidence.

3. SAME—*plaintiff in error must point out wherein instruction is erroneous.* A plaintiff in error must point out in his brief and argument wherein an instruction complained of is erroneous, and it is not sufficient to merely make the statement that the court erred in giving the instruction.

WRIT OF ERROR to the Circuit Court of Menard county; the Hon. GUY R. WILLIAMS, Judge, presiding.

F. O. R. BAKER, and H. W. MASTERS, for plaintiffs in error.

P. J. LUCEY, Attorney General, HENRY E. POND, State's Attorney, and EUGENE P. MORRIS, (J. M. SMOOT, and J. L. LANING, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiffs in error, Edward Hohimer and Isaac Hohimer, were convicted of the crime of burglary, in the circuit court of Menard county, and sentenced to a term in the

penitentiary at Chester under the Indeterminate Sentence act. The grounds urged for a reversal of the judgment are, that the verdict is contrary to the evidence and that the court erred in giving three instructions asked on behalf of the People.

Plaintiffs in error were charged with having broken into the dwelling house of Eli Mason, in the city of Athens, in Menard county, about two o'clock in the morning of May 19, 1914, and with having stolen a pair of trousers of the value of five dollars and $15.85 in money. The evidence offered on the part of the People which tended to prove the guilt of the defendants is as follows: Plaintiffs in error, Edward Hohimer and his nephew, Isaac Hohimer, who resided in Petersburg, left that city on the evening of May 18, 1914, on a train for Athens. Eli Mason, mayor of Athens, and his wife, were sleeping in an up-stairs bedroom in their home. About two o'clock in the morning they were awakened by someone in the room. Mason turned on an electric light and observed a man standing about two feet from him, with his side toward him, in the act of taking the trousers which Mason had removed when he retired that night and which lay upon a dresser in the room. After the light was switched on this man ran down a stairway and left the house through a window, taking with him the trousers and the money. The house was in great disorder and showed evidence of having been thoroughly overhauled by someone in search of valuables. Several shots were fired on the first floor as the burglar was leaving the house. A neighbor having been awakened by the disturbance heard two whistles given, apparently as a signal, in the vicinity of Mason's house, and immediately afterward heard an answering whistle a short distance down the street. Mason was able to give a fairly accurate description of the man he and his wife had seen in their room to the sheriff, who sought out plaintiffs in error, and Edward Hohimer was placed under arrest. He was not in-

formed of the charge against him or why he was arrested,
and when he arrived at the jail he demanded that the sher-
iff read him the warrant that he might know with what
offense he was being charged. On his preliminary hearing
he testified he thought that he was being charged with hav-
ing stolen some jewelry. Shortly after Edward Hohimer's
arrival at the jail Mason was sent for and upon his arrival
identified him as the man he had seen in his room on the
morning of May 19. While Mason was there, and before
Edward had been informed of the nature of the charge
against him, the sheriff compared the trousers worn by him
with the coat Mason was wearing, whereupon Edward said:
"Do you think them is the pants Mason lost? The sheeny
gave me them pants." Isaac Hohimer was later arrested,
and in telling him what the charge was against him the
sheriff remarked that Mason was not so particular about
the money as he was about the trousers, whereupon Isaac
said, "Them pants was not worth a dollar." Mrs. Mason
also identified Edward Hohimer upon the trial as the man
who had committed the burglary, and Edward and Isaac
both testified that they were together all the time during
the night of May 18.

Plaintiffs in error relied upon an alibi and the alleged
impeachment of Mason for their defense. The evidence
tending to prove the alibi is as follows: Plaintiffs in error
admit that they went from Petersburg to Athens on the
evening of May 18, but say that early in the evening they
left Athens to go to the residence of Tom Sutton, a brother-
in-law of Isaac Hohimer, where they expected to remain
while Isaac worked upon the public highway and Edward
did some work for Sutton; that they walked from Athens
to Sutton's and on the way there met Fred Hohimer, a
brother of Edward, about ten o'clock and conversed with
him; that they arrived at Sutton's about eleven o'clock and
went to the barn, where they slept in the haymow; that
Sutton heard them when they arrived but did not see them

or speak to them; that Sutton arose and went to the barn about four o'clock in the morning and had a conversation with them in the haymow. The morning of May 19 Isaac Hohimer went to work with a crew of men on the public highway and remained at work with them until the foreman of the crew informed him that the police officers at Athens were looking for him, whereupon he left work and returned to Sutton's. Edward Hohimer remained in the Sutton haymow during that day, and he and Isaac slept there again that night and remained at Sutton's until they were arrested. The testimony of plaintiffs in error with reference to the alibi is supported by that of Fred Hohimer, a brother of Edward, Mrs. Sutton, a sister of Isaac, and her husband.

Plaintiffs in error attempted to impeach the testimony of Mason by four witnesses, one of whom, a deputy sheriff, testified that he had a conversation with Mason on the morning of May 19 in which he said the burglary was committed by a man who lived in Athens, and that he mentioned the name of the man but the witness could not remember it. This same deputy assisted the sheriff in arresting plaintiffs in error on that day, and not until after two trials had been had did he give this information to anyone. Another witness testified that on the morning after the burglary Mason told him that he could "lay his hands on the man who did it; he had laid around all summer and had not done a damned day's work." Whether or not this description would fit Edward Hohimer does not appear from the evidence. Another witness testified that Mason told him the morning after the burglary that he thought the man who had entered his home was a person living in Athens other than either of plaintiffs in error, naming him. The fourth impeaching witness testified that Mason told him the morning after the burglary that if he had seen the man once who entered his home he had seen him a thousand times, or words to that effect. Mason testified that he had seen Edward Hohimer many times before the night the burglary

was committed but never knew who he was. He denied that he had ever stated to either of these witnesses that he had recognized the burglar as a citizen of Athens, but testified that on one occasion he described him as resembling the man whom the impeaching witness had named but stated that he was taller than this man.

Standing alone the evidence on behalf of the People is sufficient to establish the guilt of plaintiffs in error beyond a reasonable doubt. The People's proof is neither unreasonable, improbable nor unsatisfactory. In some respects it is contradicted by plaintiffs in error, and an attempt has been made to cast a doubt upon the testimony of Mason by the attempted impeachment. On the other hand, the People attempted to impeach one of the impeaching witnesses. As to the alibi, the jury may have disbelieved this evidence *in toto,* or they may have taken the view that as Sutton's residence was only three miles from Athens, plaintiffs in error may have gone there, as the proof tends to show, at eleven o'clock in the evening, returned to Athens, committed the burglary at two o'clock in the morning, and returned to Sutton's barn before Sutton talked with them at four o'clock in the morning. As has been often said, it is the peculiar province of the jury to weigh and consider the evidence and judge from the appearance of the witnesses on the stand, their apparent honesty, intelligence and candor, or the want of it, of the weight that should be given to their testimony. We will not hesitate to reverse a judgment of conviction in a criminal case when the proof on behalf of the People, considered with all the evidence in the case, is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of guilt, but we cannot usurp the functions of the jury by substituting our judgment for theirs in passing on the weight and credibility of conflicting testimony. (*People* v. *McCann,* 247 Ill. 130.) We cannot say in this case that the verdict of the jury was not warranted by the evidence.

By one of the instructions complained of the court gave the statutory definition of an accessory, but in that instruction cautioned the jury that the court did not intend to indicate that either of the plaintiffs in error was an accessory within the meaning of the law, but the question as to whether either of them was an accessory was one of fact for the jury to determine from the evidence. It is conceded that the definition of an accessory was given in the language of the statute, but it is insisted that it was error to give the instruction for the reason that there is no evidence that there was an accomplice in the case, and that the giving of this instruction doubtless made an unfavorable impression upon the jury and caused them to believe that there was an accessory. Mason and his wife testified that they saw but one person in their house that night. That person they identified as Edward Hohimer. The evidence on the part of the People tended to prove that Isaac was an accessory, and it was no doubt the theory of the prosecution that he should be convicted as a principal because he had been an accessory at and before the fact. It was not error to give this instruction.

The giving of two other instructions is complained of in the points assigned for reversal of the judgment. No criticism is made in the brief or argument of either of these instructions and no reason is given why they were erroneous. The statement that the court erred in giving these instructions amounts to no more than an assignment of error, and as no reasons whatever are urged in support of this alleged error it is waived. *City of Benton* v. *Blake,* 259 Ill. 211; *Sullivan* v. *Atchison, Topeka and Santa Fe Railway Co.* 262 id. 317.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*