(No. 38382.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* KENNETH L. STARK, Plaintiff in Error.

*Opinion filed January 25, 1966.*

PETER L. KRENTZ, of Plano, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and C. ROBERT OHSE, State's Attorney, of Yorkville, (FRED G. LEACH and WILLIAM A. BOMP, Assistant Attorneys General, and JEROME NELSON, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

After a jury found the defendant guilty of burglary, the circuit court of Kendall County sentenced him to the penitentiary for a term of not less than three nor more than eight years. On this appeal his principal contention is that a confession which he made to the sheriff of Kendall County ten days after his preliminary hearing before a magistrate was erroneously admitted in evidence. He also contends that the trial court's instructions concerning the criminal liability of an accessory were not warranted by the evidence, that the State's Attorney made prejudicial remarks during his closing argument, and that the verdict is not supported by the evidence.

The undisputed testimony at the defendant's trial showed that at about 1:50 in the morning of March 26, 1962, an officer of the Yorkville Police Department noticed

that a pane of glass had been broken in the door of the Southtown Texaco Service Station in Yorkville. The door handle had been turned to an open position, and the officer heard the scuffling of feet inside. The sheriff of Kendall County responded to the officer's radio call and the two officers entered the service station, where they discovered that the cash register drawer had been pulled out and that a desk in the office had been opened. The sheriff telephoned the manager of the service station who joined the officers. A cigar box containing one $20 bill, one $10 bill, and two $1 bills was missing from the desk in the office. Some books of green stamps were also missing from the desk, and some pennies were gone from the open cash register. The officers continued to search the station, and the sheriff discovered a man hiding underneath a piece of cardboard behind a water heater. With him were ten books of green stamps. The man, who identified himself as Eugene Stark, was arrested and taken to the county jail.

After the arrest of Eugene Stark, the two officers and the chief of police of Yorkville began a search for a light green 1953 Chevrolet. A friend of Eugene Stark testified at the defendant's trial that he had loaned such a car to Eugene Stark for the weekend. At approximately 2:30 A.M. the officers discovered and stopped an automobile meeting the description of the one they were seeking. It was driven by the defendant, Kenneth Stark, who said he was looking for his brother, Eugene. The defendant was arrested and taken to the county jail. He had in his possession one $20 bill, one $10 bill, two $1 bills, and 99 cents in pennies.

The transcript of a preliminary hearing on the defendant's motion to suppress his confession is not included in the record. This omission was noted during the oral argument of this case, and the State's Attorney was requested to file the transcript within ten days. After the expiration of this period, the State's Attorney reported that he could not do

so because of the court reporter's inability to locate her notes.

The defendant did not testify at the trial, but the sheriff testified as to the defendant's custody and confession. He said that when the defendant was arrested, he asked to call an attorney. The sheriff replied, "Attorneys don't like to be called at two-thirty in the morning," but the defendant was informed that he could make his phone call later. On the same day the defendant was brought before a magistrate and bound over to the grand jury. For ten days thereafter, he was incarcerated on the second floor of the county jail. He was the only prisoner on the second floor. The sheriff explained that Eugene Stark was being held on the first floor and that it was the sheriff's practice to separate prisoners involved in the same crime. On cross-examination, the sheriff testified that he had never interrogated the defendant. The defendant's attorney asked:

"Q: At no time?

A: We had many discussions.

Q: What would you call discussions?

A: On the morning of the 5th, in the jail, I asked him if he wanted to tell me what took place. On the morning of the 26th, when I served him breakfast, I asked him if he would cooperate with me.

Q: Cooperate with you?

A: In questioning, sir.

Q: Did you question the defendant at any time other than the times mentioned?

A: No, just discussions.

Q: Did you ask him any questions?

A: Each time I fed him which was three times. Every couple times a day he would open the discussion and, of course, I would talk with him.

Q: Was there any other person other than yourself in charge of the defendant during this time?

A: No. * * *

Q: During this period, you have already stated that you asked the defendant to cooperate?

A: (Nods in the affirmative). That's regarding jail rules and anything I might ask."

On the morning of April 5, 1962, the defendant asked what sentence the sheriff thought he might receive. The sheriff replied that he did not know. The defendant asked whether he might receive probation, and the sheriff again said that he did not know. Later that morning, the defendant asked whether Eugene Stark had made a statement. The sheriff replied that he had. According to the sheriff's testimony, the defendant then said that he would write a statement. The sheriff secured a "statement form" and left it with the defendant. He returned approximately an hour and a half later and watched as the defendant signed a statement which read in part, "On the 26th of March I and Gene Stark broke into the Southtown Service Station and did then and there take $32.00 from the premises."

In *People* v. *Couvion,* 33 Ill.2d 408, we held that under the circumstances of the case, the trial court had a duty to advise the defendant orally of his right to counsel and his right to a jury trial. We added: "Since the proceedings at the hearing were not reported, we are unable to determine whether defendant actually was informed of his right to counsel upon a showing of indigence, and his right to demand jury trial. The absence of a transcript may not reasonably be attributed to defendant, as it is the clear statutory duty of the duly appointed court reporter to '* * * take full stenographic notes of the evidence in *all* trials and proceedings in the court for which he is appointed, and furnish forthwith one transcript of the same, correctly made, to either party to the suit or proceeding upon the request of such party or his attorney." (Emphasis ours.) (Ill. Rev. Stat. 1961, chap. 37, par. 331, as amended by act approved July 5, 1957). Under the peculiar circumstances here pre-

vailing, the order of commitment can not stand in the absence of a showing that defendant actually *was* made aware of his right to be represented by counsel upon proof of indigence." (33 Ill.2d at 410-11.) See also *People* v. *Breese,* 34 Ill.2d 61.

As in *Couvion,* potentially determinative evidence is unavailable to the reviewing court in this case through no fault of the defendant. Our only knowledge of the circumstances surrounding his confession comes from the sheriff, and the sheriff's report of "conversations" in the jail is, to some extent at least, ambiguous. The balance of his testimony casts doubt upon his conclusion that he did not "interrogate" the accused. Nor do we know whether the defendant's request to consult an attorney was ever renewed in the days that followed.

At the time this case was tried, neither *Massiah* v. *United States,* 377 U.S. 201, 12 L. ed. 2d 246, nor *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. ed. 2d 977, had been decided. Today, as we consider the admissibility of a confession made in the absence of counsel after the prisoner's presentation to a magistrate, it may or may not be a significant issue whether the confession was "deliberately elicited" by a government officer or was spontaneously volunteered by the accused. (See *Massiah* v. *United States,* 377 U.S. 201; *United States* v. *Gardner,* (7th cir.) 347 F.2d 405.) It may also be significant whether the accused waived the assistance of counsel, as he would have been required to do before a confession made after indictment could be admitted. (See *McLeod* v. *Ohio,* 378 U.S. 582; 12 L. ed. 2d 1037; *People* v. *Halstrom,* 34 Ill.2d 621, decided this term.) In these circumstances, the testimony at the hearing on the motion to suppress is essential to an adequate review.

We hold that this case must be remanded for a new hearing on the admissibility of the defendant's confession. If the confession is eventually held inadmissible, a new trial will be ordered. The loss of the transcript of the preliminary

hearing does not require us to order a new trial, however, and we shall therefore review the other errors alleged by the defendant. See *People* v. *Wright,* 30 Ill.2d 519; *People* v. *Beattie,* 31 Ill.2d 257; *People* v. *Jackson,* 31 Ill.2d 408.

The trial court instructed the jury that they were justified in finding the defendant guilty if he was an accessory to the crime, as that term had been defined by the court. The defendant claims that this instruction was prejudicial because "the testimony showed either that the defendant was guilty of burglary or was not guilty of any crime." The fact that the defendant might have been guilty of direct participation in the crime does not render this instruction improper if there was also sufficient evidence that he aided another in the commission of the burglary. (*Cf. State* v. *Cooper,* 26 Wash. 2d 405, 410-13, 174 P.2d 545, 550; *Alder* v. *Commonwealth,* 277 Ky. 136, 146-7, 125 S.W.2d 986, 991-92; *People* v. *Latona,* 2 Cal. 2d 714, 725-26, 43 P. 2d 260, 264-65; *People* v. *Lee,* 237 Ill. 272, 277; *People* v. *Jordan,* 303 Ill. 316.) We believe that the instruction accurately expressed one of the theories upon which the defendant could be convicted, and that there was adequate evidence to support it. See *People* v. *Clements,* 28 Ill.2d 534; *People* v. *Weinberg,* 361 Ill. 537; *People* v. *Schullo,* 360 Ill. 580; *People* v. *Cummings,* 338 Ill. 636; *People* v. *Hohimer,* 271 Ill. 515.

The State's Attorney concluded his argument before the jury by stating: "This has not been a long case. It is up to you to prove that Mr. Stark is guilty beyond a reasonable. [*sic.*] It is your duty now to determine whether this defendant, Kenneth Stark, has been proved guilty of the crime or is not guilty." At other points in his brief summation, the State's Attorney had stated: "You have to determine in your own mind whether the evidence shows, beyond a reasonable doubt, whether the accused committed that offense. * * * You have to * * * see if there is sufficient proof, beyond a reasonable doubt, that the accused

is guilty or is not." The statement that the jury had a duty to prove the defendant "guilty beyond a reasonable [*sic.*]" seems plainly to have been made inadvertently. Any false impression that it conveyed to the jury was immediately corrected, and the defendant made no objection. The court fully instructed the jury on their obligation to determine the facts, and we do not believe that they could have been misled.

When the defendant was arrested, he had in his possession the exact amount of currency that the manager had reported missing, and the bills were of the same denominations as those that had been taken. The defendant was arrested in a car that had been loaned to Eugene Stark, who had been discovered inside the station no more than one-half hour before. In these circumstances, the verdict is amply supported by the evidence.

This case will be remanded for a hearing on the admissibility of the defendant's confession. If the confession is held inadmissible, the trial court will vacate the judgment of conviction and grant the defendant a new trial. If the confession is held admissible the trial court will enter a new judgment of conviction. See *People* v. *Jackson,* 31 Ill.2d 408, 411.

*Cause remanded, with directions.*