THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CRAIG RILEY, Defendant-Appellant.

Fourth District    No. 16710

Opinion filed August 20, 1981.—Rehearing denied September 17, 1981.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Garry W. Bryan, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant, Craig Riley, was convicted on July 15, 1980, of burglary and felony theft. The court subsequently sentenced him to respective concurrent sentences of 4 years' and 2 years' imprisonment. Defendant's appeal challenges both his convictions and his sentences. We affirm both.

The major thrust of defendant's claims on appeal centers upon (1) whether the evidence was sufficient to prove him guilty of the offenses either as a principal or an accessory, and (2) the propriety of instructions given to the jury as to (a) accountability, and (b) the inference arising from evidence of the accused's unexplained exclusive possession of property taken in the burglary and theft charged (see *People v. Housby*

(1981), 84 Ill. 2d 415, 420 N.E.2d 151). Defendant also complains of (1) improper use by the State of a prior inconsistent statement of one of its witnesses, (2) the cumulative effect of the errors claimed, and (3) failure of the trial judge to give a fuller explanation for the sentences imposed.

Defendant was charged with burglary of an apartment on January 27, 1980, and having stolen certain items found inside. At trial the testimony of the occupant of the apartment fully established that a burglary and theft had taken place. Among the items she described as missing were a stereo, a camera, and certain small objects resembling tie pins which she had won as an award for being a cheerleader. These objects were worn by pinning them on a sweater. She called them "cheerleading bars." Detective Charles Crowe testified to finding objects similar to the above on March 15, 1980, in an apartment where defendant was shown to be living with Michelle Greene. At trial, the victim identified those objects as those which were missing.

Detective Crowe testified that Michelle Greene had let him into the apartment and that when he left she accompanied him and another officer to a bake store where defendant worked. The evidence was undisputed that Greene entered the store first and whispered something to defendant whereupon he left the building and fled.

The testimony of Michelle Greene, called by the State, involves several of the issues on appeal. She stated that she did not know who moved the stereo to their apartment but that it had previously been at the Kim and Terry Anderson residence and before that at Mark Olson's apartment. She testified that defendant had previously, at times, stayed at the Anderson residence, as had Jack Gaylord, a friend of defendant's, and that both men had also stayed in Olson's apartment. Greene then testified that defendant had obtained the stereo and other items, identified as missing from the victim's apartment, one evening when he was riding in an automobile with Gaylord and Lucy Swope, and they stopped in front of an apartment house. She said defendant had told her Gaylord had gone into the building and brought the items out but he had not helped Gaylord. She also stated that defendant had given her differing explanations as to how he obtained the items. We will discuss the balance of Michelle Greene's testimony later.

Defendant testified that while he was riding with Gaylord and Swope one night, Gaylord stopped at his brother's apartment to get some clothes. Defendant and Swope stayed in the car while Gaylord went into the apartment building. A few minutes later, Gaylord returned and put some stereo equipment and a bag into the trunk. Defendant assumed the stereo belonged to either Gaylord or Swope. On the same night Gaylord stopped at two other apartment buildings but did not bring anything back to the

car. Defendant stayed in the car. Defendant stated that when he was preparing to move to the apartment with Greene, Gaylord asked him to keep one of Gaylord's stereos until Gaylord found another place to live.

Defendant further testified that he first learned the stereo was stolen when Greene and the police officers came to the bake shop on March 15. He ran because he panicked when Greene told him that the police said the stereo was stolen. He denied entering the victim's apartment and testified that he did not know the stereo was stolen when he agreed to keep it for Gaylord. He did not know if the stereo which he kept for Gaylord was the same which Gaylord had put in the car on the night when he and Swope remained in the car.

Finally, defendant stated that when Greene asked about the stereo equipment, he said it belonged to Gaylord and Swope and he was just holding it for them. He denied ever telling Greene that he knew the stereo was stolen or he had been present when Gaylord and Swope decided to steal the stereo.

The jury was given Illinois Pattern Jury Instruction, Criminal, Nos. 5.03, defining the principles of accountability, and 13.21, permitting the jury to infer defendant's guilt of both offenses from evidence of his unexplained exclusive possession of the stolen property. Defendant objected only to the accountability instruction, claiming then and now that it was without evidentiary support. For the first time on appeal he objects to the giving of the other instruction, maintaining that it, too, was not supported by the evidence and contending that giving it violated his right to due process. He also maintains that even if the inference from the possession of the property was properly raised it cannot be used to support a conviction based on accountability and thus cannot be used to support the giving of the accountability instruction.

In *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, the supreme court definitively discussed the inference arising from an accused's unexplained exclusive possession of the fruits of a recent burglary or theft. The court examined the constitutional principles involved and held that the inference arises and the jury may be so instructed when: (1) there is a rational connection between a defendant's recent possession of property stolen in the burglary and his participation in the burglary; (2) a defendant's guilt of burglary is more likely than not to flow from his recent, unexplained and exclusive possession of burglary proceeds; and (3) there is evidence corroborating the defendant's guilt.

Defendant's theory that the *Housby* inference applies only to convictions based upon guilt as a principal finds support in language in *People v. Umphers* (1971), 133 Ill. App. 2d 853, 272 N.E.2d 278. There a substantial portion of the proof of the defendant's guilt of burglary arose

from evidence of possession of fruits of the offense giving rise to the inference. The court stated:

> "There is no direct evidence in the record in this case on which to base this instruction. Under the evidence the defendant was a principal and not an accessory, and the court should not have given the instruction concerning an accessory. Notwithstanding, we do not regard its giving as error under the circumstances presented by the evidence. [Citations.]" 133 Ill. App. 2d 853, 858, 272 N.E.2d 278, 281.

Fifteen years prior to *Housby* the supreme court decided *People v. Stark* (1966), 33 Ill. 2d 616, 213 N.E.2d 503, where a defendant had been convicted of burglary. Although remanding for a hearing on the admissibility of a confession, the court held the giving of an accountability instruction to have been proper if there was evidence to support it. Cited as the evidence supporting the verdict and presumably, the instruction, was testimony of defendant's arrest one-half hour after the offense in the car of a person found inside the looted premises and defendant's then possession of money in the same denominations as that missing from the premises. In *People v. Clifford* (1976), 38 Ill. App. 3d 915, 349 N.E.2d 922, also a pre-*Housby* case, defendant and another were shown to have been seen leaving the area of a burglary with the proceeds thereof. Evidence was presented that they knew each other and were both nonresidents of the area. The giving of an accountability instruction was upheld. The court stated the evidence of the defendant's possession of the proceeds supported a theory defendant was guilty as a principal but that evidence of direct participation did not make the accountability instruction improper if there was also evidence that the defendant had aided another. Cited as evidence supporting the theory of accountability was the evidence of the possession of the proceeds by the two.

■■ Nothing in *Housby* refutes the use of the inference to prove guilt by accountability. The rationale of the inference is that the unexplained possession indicates the obtaining of the proceeds, other than by participation in the offense, would be unlikely. If, in a proper case, the inference could be used to help prove guilt by accountability prior to *Housby*, its use when the strict requirements of *Housby* have been met would be even more appropriate. We hold that the inference may be used in support of a theory of guilt by accountability.

We examine first the proof of defendant's possession of the property claimed by the victim. The parties do not dispute her identification of the stereo. She identified the camera because it resembled the one she had, and on its box she saw a notation which she had made of the telephone number of a friend. "Cheerleading bars" are a unique item. The victim

described those obtained from Greene as resembling hers. For "cheer-leading bars" of another to have been with the other stolen items and not to have themselves been taken from the victim's apartment would have been an extremely unlikely coincidence. Although Greene's occupancy of the apartment may have made the possession of the items joint, no contention has been made that would prevent defendant from having sufficient possession for the inference to arise.

The time span between the burglary on January 27, 1980, and defendant's possession on March 15, 1980, was not unduly long considering undisputed testimony the goods had been taken when defendant was at least present at the building housing the victim's apartment. The case was unlike *People v. Taylor* (1962), 25 Ill. 2d 79, 182 N.E.2d 654, where the time span was long and the circumstances indicated the defendant could have purchased the items from the culprit. Defendant testified to an explanation for his possession of the stereo but gave none for his possession of the other items. In portions of her testimony, Greene credited defendant with giving innocent explanations of his possession of the items but even there she said his explanations were inconsistent. The jury was not required to believe defendant's story and could conclude that his possession was not properly explained. *People v. Hainline* (1979), 77 Ill. App. 3d 30, 395 N.E.2d 1224.

A rational relationship obviously existed between defendant's possession of the various items and his participation in the crimes either as a principal or an accessory. Whether a sufficient showing was made as to the existence of the second and third requirement of *Housby* is a more complicated question. *Housby* permits use of the same evidence to make proof of both requirements, and much the same evidence is relevant to both issues here.

■■ Evidence of defendant's flight both corroborated proof of his guilt and tended to make it more likely than not that his guilt flowed from his possession of the items. The flight of an accused is a circumstance indicating his consciousness of guilt, and when there is no showing that the guilt may have reference to other charges the inference is that he has a sense of guilt as to the charges in issue. (See *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385; E. Cleary & M. Graham, Handbook of Illinois Evidence §801.3, at 399 (3d ed. 1979).) Defendant's only explanation for his flight here was that he felt nervous when Greene told him the police claimed the stereo was stolen. The probative value of this evidence was not nullified by his explanation.

We also consider the testimony of Michelle Greene to have tended to show that defendant had admitted his participation in the offenses. Both her testimony and that of defendant showed that defendant was at least

present on January 27, 1980, when the stolen items were removed from an apartment. However, Greene's initial testimony on direct examination by the State was that defendant had told her he did not help Gaylord and that defendant had never mentioned to her that the items were stolen. Greene was then asked whether on or about March 19, 1980, she had given a statement to Bloomington law enforcement officers and she stated she had. The following colloquy then took place:

"Q. In your statement to Detective Crowe do you recall saying that you were not sure from discussing this with Craig who had entered the building—

A. Yes.

Q. —And apparently where these were taken?

A. Yes.

Q. Would it also be accurate to say in your statement that you, when talking with Craig, Craig explained to you that Jack Gaylord and he had stolen the items? Did you say that to Detective Crowe?

A. I don't know."

After Greene indicated that she could not recall the content of her statement to Detective Crowe, the prosecutor had Greene read the following excerpt from her signed statement:

"He, Craig, said that Lucy Swope had driven and he and John Gaylord had stolen the stereo. He did not tell me who actually entered the building and took the equipment."

After Ms. Greene read the statement, the prosecutor continued examination:

"Q. All right, now when you made that statement you were telling Detective Crowe that Craig had not told you he had gone in the building, right?

A. Right.

Q. But in the same statement that same sentence you are also telling Detective Crowe that he, Craig, told you that he and Jack Gaylord stole or had stolen the equipment, isn't that the words that were used?

A. That is the words that were used, but I think I put stolen in my own words. I don't think that Craig said that to me.

Q. In giving that statement to Detective Crowe that was your way of interpreting what Craig had told you?

A. I guess so."

Later, on cross-examination, Greene did state that her purported statement was not all in her words. She did not refute her statement that she had used the word "stolen," although she did state that prior to talking with Detective Crowe, she did not know the property was stolen. Greene

further testified that after her conversation with Detective Crowe, defendant did tell her that Gaylord had stolen the stereo and wanted defendant to keep it for Gaylord.

■■ The defense made no objection to the State's line of questioning. We discuss later whether plain error resulted from the questions. Regardless of procedural error and regardless of infirmities in Greene's testimony, we consider her testimony to have some value in showing defendant to have participated in the offenses. In testifying to a conversation, a witness need not repeat the words of the declarant but may give the substance of the conversation. (*Kirchner v. Morrison* (1926), 320 Ill. 236, 150 N.E. 690; *Main v. McCarty* (1854), 15 Ill. 441; E. Cleary & M. Graham, Handbook of Illinois Evidence §602.3, at 237 (3d ed. 1979).) The effect of the latter part of Greene's testimony was to repeat the substance of a statement made by defendant to her was that he and Gaylord "had stolen the stereo" even if these were not the exact words used.

■■ The question of the probative value of Greene's testimony is a close one because a witness to a statement by another may not merely give a conclusion as to the effect of the language used by the declarant. In *Anderson v. Augustana College* (1921), 300 Ill. 72, 132 N.E. 826, testimony by a witness that a letter contained an agreement to devise property had no probative value in establishing the agreement when the witness could not remember the substance of the letter. In *Bragg v. Geddes* (1879), 93 Ill. 39, testimony by a witness that he concluded from a conversation that certain persons were partners was held to have no probative value in establishing a partnership. Similar treatment was given in *Helm v. Cantrell* (1871), 59 Ill. 524, to testimony that a person had admitted liability on a note. (See also E. Cleary & M. Graham, Handbook of Illinois Evidence §704.5, at 381-82 (3d ed. 1979).) Here, Greene did use the conclusionary term "stolen," but she did give the substance of the conversation. We deem it to show an admission by defendant of his participation in the crimes.

Defendant maintains that Greene's prior inconsistent statement cannot properly be used to convict him. However, it is not Greene's written statement to which we attribute some probative value but her testimony at trial that the statement contained the substance of what defendant had said.

■■ The circumstantial evidence discussed so far all indicates a guilt of defendant of the offenses without reference to whether he was guilty as a principal or an accessory. Although his admitted presence in the automobile when the stolen items were brought out was, of course, insufficient to convict him (*People v. Tillman* (1971), 130 Ill. App. 2d 743, 263 N.E.2d 904), it was a circumstance to be considered with reference to his guilt as an accessory. Considering defendant's denial of entering the victim's

apartment or even the building housing the apartment, in the light of the evidence of defendant's flight and his admission, the inference that more likely than not flows from his possession of the items was that he committed burglary and theft as an accessory.

■■■ Accordingly, the instruction on the inference was properly given and because of the probative value of that inference and the circumstantial evidence as to accountability, the instruction on accountability was also proper.

■■■ The rule is well established that one charged as a principal may be convicted as an accessory upon proper proof. (*People v. Touhy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425.) The offense is the same although the elements of proof differ. Some of the evidence here indicated defendant was guilty as a principal and not an accessory. We take that as strengthening rather than weakening the proof of his guilt of the offense. We interpret the language of *Stark* and *Clifford* to so indicate. We hold the jury could have properly found defendant guilty of either offense as long as the jury determined beyond a reasonable doubt he had committed the offense without determining which way it was committed. The evidence here was sufficient to support a jury verdict as to both offenses.

■■ The final issue concerning the trial involves the portion of the State's examination of Michelle Greene with reference to her prior statements about statements made to her by defendant. As defendant made no post-trial motion, resulting errors would require reversal only if singly or cumulatively, they constituted plain error. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040.) We have previously ruled that despite the contradiction in her testimony, she presented evidence of an admission by defendant. Accordingly, the trial court did not err in giving, without objection by defendant, Illinois Pattern Instruction, Criminal, No. 3.06, explaining to the jury the use that could be made of such an admission. Likewise, no error resulted from the prosecutor's reference to the admission in his closing argument. As the evidence was admissible as an admission by the defendant, we need not pass upon the State's contention that the procedure was proper impeachment or that it would have been had the defendant objected and the State then obtained leave to call Greene as a court's witness. We do not agree with the State that the procedure used was proper refreshment of the witness' recollection. However, no objection was made to the leading nature of the questions. The fact that they referred to a prior statement of the witness inconsistent with her testimony she had just given at trial falls far short of resulting in plain error even if impeachment of the witness would not have been proper and justified the procedure.

■■ Under section 5—4—1(c) of the Unified Code of Corrections (Ill.

Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)), the trial judge is required to specify on the record the basis for the defendant's sentence. Here, the trial indicated that "justice would be served" and a sufficient deterrent effected by imposition of the same sentences defendant had received for two other convictions of burglary and theft, with the sentences to run concurrently. We do not agree with defendant that the court had given insufficient specification for the sentence. The reference to the need for deterrence and the fact that defendant was also to be serving other concurrent sentences was quite specific. Moreover, had defendant wished greater specificity, he should have requested it at the time of sentencing. *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 403 N.E.2d 607.

The convictions and sentences are affirmed.

Affirmed.

WEBBER and LONDRIGAN, JJ., concur.